COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Powell and Alston
Argued at Richmond, Virginia


SHIRON W. HERRON, JR.

                                  OPINION BY
v.      Record No. 1759-08-2         JUDGE ROSSIE D. ALSTON, JR.
                                  FEBRUARY 23, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Richard D. Taylor, Jr., Judge

James L. McLemore, IV, for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (William C.
Mims, Attorney General, on brief), for appellee.


Shiron W. Herron, Jr. (appellant) appeals his conviction for violating Code § 53.1-203(5),

making it unlawful for any prisoner in a correctional facility to possess a chemical compound not

lawfully received.[1]  Appellant argues the evidence was insufficient to support the conviction

because he did not intend to bring cocaine into a correctional facility.  Appellant further argues the

conviction is in violation of his Fifth Amendment right against self-incrimination.  For the reasons

stated below, we affirm appellant's conviction.

I.  BACKGROUND

"When considering a challenge to the sufficiency of evidence on appeal, we review the

evidence in the light most favorable to the prevailing party at trial and consider all inferences fairly

deducible from that evidence."  Jones v. Commonwealth, 276 Va. 121, 124, 661 S.E.2d 412, 414

(2008).

---

[1] Appellant was also convicted of possession of cocaine with intent to distribute.  This
Court denied appellant's petition for appeal of that conviction.

The evidence showed that on April 19, 2006, Detective S. Thomas (Thomas) of the Richmond Police Department was investigating suspicious activity at an apartment complex. While there, Thomas observed appellant knocking on the door of an apartment. Thomas asked appellant if he lived at the apartment, and appellant replied that he did not. When the door opened, appellant quickly entered and shut the door. Approximately ten to fifteen seconds later, Thomas knocked on the door and the apartment leaseholder allowed Thomas to enter. Once inside, Thomas observed appellant poking his head out of the kitchen. At some point after Thomas entered the apartment, he determined that appellant had an outstanding warrant for assault and battery, and he arrested appellant.

In a search incident to arrest, Thomas asked appellant if he had anything in his buttocks or crotch area. Appellant said that he did not. However, when Thomas asked appellant to spread his legs, appellant placed his feet only a few inches apart. When Thomas touched the backside of appellant's legs, appellant immediately spun around. As a result, Thomas was unable to complete the search.

Thomas then took appellant to jail. Before going inside, Thomas again asked appellant if he had any contraband on his person. Thomas specifically informed appellant there were additional charges for taking any illegal substance inside the jail. Appellant again responded that he did not have any drugs.

Upon arriving at the jail Thomas informed officers there that appellant was uncooperative in his search and would need to be searched further. During processing, a deputy attempted a pat-down search but again, when he came near appellant's buttocks area, appellant jumped back and spun around. An officer asked appellant if he had anything on his person that he wanted to turn over, and appellant again said that he did not. Officers placed appellant in a holding cell and performed a strip search. Once appellant removed his pants, one of the officers noticed a plastic

baggy between appellant's buttocks. The officer asked appellant to remove the bag. Appellant pulled the bag from his buttocks, ripped it open, and began shoving small packets of an off-white substance into his mouth. Officers restrained appellant and retrieved some of the substance, which was later determined to be cocaine.

At trial, appellant moved to strike the evidence recovered during the search conducted at the jail, arguing that he did not intend to bring cocaine into the jail and that forcing him to confess to possession of the drugs violated his Fifth Amendment right against self-incrimination. The trial court denied appellant's motion to strike the evidence and found appellant guilty of possession of an illegal substance in a correctional facility. This appeal followed.

## II. ANALYSIS

Appellant was convicted of violating Code § 53.1-203(5), which provides:

> It shall be unlawful for a prisoner in a state, local or community correctional facility or in the custody of an employee thereof to . . . [p]rocure, sell, secrete or have in his possession any chemical compound which he has not lawfully received . . . .

Appellant argues that the trial court erred in convicting him of possession of cocaine in violation of the statute because he did not have the requisite intent to bring cocaine into the jail. Appellant contends that the Commonwealth did not prove beyond a reasonable doubt that he possessed the specific intent to take the drugs into a correctional facility, because he did not enter the jail voluntarily. Further, appellant argues that forcing him to admit to possession of the drugs is a violation of his right against self-incrimination, as conferred by the Fifth Amendment to the United States Constitution. In this regard, appellant argues that he was presented with a "Hobson's choice"[2] of admitting that he had contraband, thus waiving his Fifth Amendment rights with respect

_____

[2] According to legend, Tobias Hobson was the first Englishman to rent horses for hackney use. Hobson owned a full stable of horses, giving potential customers the appearance of a wide selection from which to choose. However, in order to rotate the use of his horses, Hobson offered potential customers one of two choices: take the horse nearest the stable door or take

- 3 -

to a potential charge of possession of cocaine, or alternatively running the risk of being charged with the instant offense if the drugs on his person were recovered while appellant was inside the jail.

In a challenge to the sufficiency of the evidence, this Court must uphold appellant's conviction unless it "is plainly wrong or without evidence to support it." Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997).

To the extent the issue presented here involves the statutory construction of Code § 53.1-203, this Court reviews the trial court's ruling *de novo*. Robinson v. Commonwealth, 274 Va. 45, 51, 645 S.E.2d 470, 473 (2007); Williams v. Commonwealth, 50 Va. App. 337, 340, 649 S.E.2d 717, 718 (2007). The basic rules of statutory construction require this Court to determine intent from the words used in the statutes at issue. See e.g., Tucker v. Commonwealth, 268 Va. 490, 493, 604 S.E.2d 66, 68 (2004). "Although penal laws are to be construed strictly [against the Commonwealth], they ought not to be construed so strictly as to defeat the obvious intent of the legislature." Carter v. Commonwealth, 38 Va. App. 116, 125, 562 S.E.2d 331, 335 (2002) (alteration in Carter) (quoting Willis v. Commonwealth, 10 Va. App. 430, 441, 393 S.E.2d 405, 411 (1990)). "'[A] statute should never be construed so that it leads to absurd results.'" Id. (quoting Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992)).

---

none at all. More often than not, the horse offered was surpassed in appearance and quality by others further down the line, and thus the nature of the purchaser's circumstances has since become a metaphor for anyone given a difficult choice between two sub-optimal alternatives. See The American Heritage Dictionary of the English Language 835 (4th ed. 2006). Interestingly, the premise of the "Hobson's choice" was later applied in the automotive transportation industry. Recall Henry Ford's famous offer - "Any customer can have a car painted any colour that he wants so long as it is black." Henry Ford & Samuel Crowther, My Life and Work 72 (1922). Thus, a true "Hobson's choice" is no real choice at all - the only options being to either accept or refuse the offer that is given to you. Hence, by the very legend and its progeny, a "Hobson's choice" is different from a true choice between two (or more) equally agreeable or disagreeable options.

A.  Intent Requirement

Appellant's first contention is that the trial court erred in denying his motion to strike the evidence because the Commonwealth failed to prove beyond a reasonable doubt that appellant intended to bring cocaine into the jail.  However, nothing in Code § 53.1-203 requires that the Commonwealth prove appellant's specific intent.

> [T]he law is clear that the legislature may create strict liability offenses as it sees fit, and there is no constitutional requirement that an offense contain a *mens rea* or *scienter* element.  Thus, courts construe statutes and regulations that make no mention of intent as dispensing with it and hold that the guilty act alone makes out the crime.

Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003) (citations omitted).

In Esteban, the defendant was convicted under Code § 18.2-308.1(B), which prohibits possession of a firearm on school property.  Id. at 606-07, 587 S.E.2d at 524.  Esteban argued that she did not know there was a firearm in the bag she was carrying, although she admitted to intentionally and voluntarily entering onto school property.  Id. at 608, 587 S.E.2d at 525.  Esteban argued the trial court should have instructed the jury that the Commonwealth had to prove she knew she possessed the firearm on school property.  Id. at 608-09, 587 S.E.2d at 525.  Rejecting Esteban's argument, the Supreme Court of Virginia held that in enacting Code § 18.2-308.1(B), the General Assembly intended to "assure that a safe environment exists on or about school grounds" by prohibiting "the introduction of firearms into a school environment," even those introduced inadvertently or unintentionally.  Id. at 609-10, 587 S.E.2d at 526.  Thus, the Court in Esteban held Code § 18.2-308.1(B) created a strict liability crime and affirmed Esteban's conviction.

The legislative intent behind Code § 53.1-203(5) is no less compelling.  Any introduction of a controlled substance into a correctional facility threatens the successful rehabilitation of the prisoners in that facility, compromises the health of the prisoners, and threatens the safety of

those who work in that facility.  See generally Winston v. Commonwealth, 51 Va. App. 74, 82, 654 S.E.2d 340, 344 (2007) (upholding body cavity search of pre-trial detainees, this Court noted "the government has a compelling interest in maintaining order in a jail and in preventing the introduction of contraband into the facility").

Further, under well-settled rules of statutory construction, "omitted terms were not intended to be included within the scope of the statute."  Commonwealth v. Brown, 259 Va. 697, 704-05, 529 S.E.2d 96, 100 (2000).  Code § 53.1-203(5), like Code § 18.2-308.1(B), contains no intent requirement, and this Court will not read one into the statute.  Accordingly, Code § 53.1-203(5) does not require the Commonwealth to prove appellant intended to bring drugs into a correctional facility.

Appellant further contends that even if Code § 53.1-203(5) is a strict liability offense, the Commonwealth still must prove that appellant committed a voluntary act.  "All crimes of affirmative action," even strict liability crimes, "require something in the way of a mental element-at least an intention to make the bodily movement which constitutes the act which the crime requires."  1 Wayne R. LaFave & Austin W. Scott, Substantive Criminal Law § 3.5(e), at 314 (1986).  Appellant argues that it is undisputed that he did not enter the jail voluntarily; thus, the Commonwealth failed to prove he committed a voluntary act.

Our appellate courts have never addressed, in a published opinion, the "voluntary act" required for a conviction under Code § 53.1-203(5).  However, the majority of other jurisdictions find "no more than entry into jail knowing that one is carrying contraband is required by the plain terms of the governing statutes."  See State v. Alvarado, 200 P.3d 1037, 1041, 1043 (Ariz. Ct. App. 2008) ("[Defendant's] possession of a controlled substance was voluntary in that, after being advised of the consequences of bringing drugs into the jail, [the defendant] consciously chose to ignore the officers' warnings, choosing instead to enter the jail in

possession of cocaine."); <u>People v. Ross</u>, 76 Cal. Rptr. 3d 477, 479-82 (Cal. Ct. App. 2008) (finding voluntary act does not require the defendant's presence in jail be voluntary as that would controvert settled public policy); <u>State v. Winsor</u>, 110 S.W.3d 882, 886-88 (Mo. Ct. App. 2003) (affirming the defendant's conviction for possessing a controlled substance in jail, reasoning that voluntary presence in jail was not an element of the offense, and to hold otherwise would lead to an absurd result); <u>Brown v. State</u>, 89 S.W.3d 630, 633 (Tex. Crim. App. 2002) (*en banc*) (rejecting the defendant's claim that he did not voluntarily bring marijuana into jail, the court reasoned that under Texas law, the term "'voluntarily'" means simply the "'absence of an accidental act, omission or possession'" (quoting <u>Alford v. State</u>, 866 S.W.2d 619, 624 (Tex. Crim. App. 1993))); <u>State v. Canas</u>, 597 N.W.2d 488, 496-97 (Iowa 1999) (rejecting the defendant's claim that he did not voluntarily bring marijuana into jail, the court reasoned that the defendant had the option of disclosing the drugs before he entered the jail and chose not to do so), <u>abrogated in part on other grounds</u>, <u>State v. Turner</u>, 630 N.W.2d 601, 606 n.2 (Iowa 2001).

Courts in the minority of jurisdictions hold that in order for the involuntary act of entering the jail with drugs to supply the basis for a conviction of bringing drugs into jail, "the involuntary act must, at a minimum, be a reasonably foreseeable or likely consequence of the voluntary act on which the state seeks to base criminal liability." <u>State v. Tippetts</u>, 43 P.3d 455, 459-60 (Or. Ct. App. 2002) ("[Police officer's] act of arresting [the] defendant and transporting him to jail was an intervening cause [that alleviated the] defendant's criminal liability."). <u>Accord</u> <u>State v. Eaton</u>, 177 P.3d 157, 161-62 (Wash. Ct. App. 2008). <u>See also</u> <u>State v. Cole</u>, 164 P.3d 1024, 1026-27 (N.M. Ct. App. 2007) (finding the defendant must enter the jail voluntarily in order to be convicted under the statute); <u>State v. Sowry</u>, 803 N.E.2d 867, 870-71 (Ohio Ct. App. 2004) (holding the defendant could not be held liable for conveying drugs into the detention facility because he had no control over his person once he was arrested).

We find the analysis of the majority jurisdictions more persuasive because of the logic of their conclusions. The reasoning of the majority of jurisdictions is more persuasive, both because these opinions are generally more logically related to the language of our statute and Virginia case law[3] and because these opinions more accurately reflect the intent of our legislature in creating Code § 53.1-203(5). Any analysis of Code § 53.1-203(5) directing the focus to the "voluntariness" of appellant's entry into the correctional facility would lead to absurd results because it can be reasonably assumed that virtually no one goes to jail voluntarily. Accordingly, we hold appellant's criminal action in this case was failing to dispose and/or reveal the presence of the drugs on his person prior to his transport into the jail facility. Appellant had ample opportunity to reveal the concealed drugs before he was taken inside the jail. The evidence at trial showed that appellant was inside an apartment for ten to fifteen seconds before Officer Thomas entered. Further, after appellant was arrested, Thomas asked appellant if he had any drugs on his person, to which appellant responded that he did not. Before entering the jail, Thomas again asked appellant if he had any drugs on his person and advised appellant that there were additional charges for bringing contraband into the jail. However, appellant chose to conceal drugs on his person and then failed to disclose the drugs after being advised of the consequences of bringing drugs into the jail. Under these circumstances, we hold appellant's act of taking drugs into the jail was voluntary.[4]

---

[3] In Morris v. Commonwealth, 51 Va. App. 459, 468, 658 S.E.2d 708, 712 (2008), this Court upheld Morris's conviction for possessing narcotics in Hanover County, despite her contention that she was unconscious when she was transported to that jurisdiction and, therefore, involuntarily placed within the jurisdiction. "The fact that she may have been unconscious when she was transported into Hanover does not negate the fact that she knowingly and intentionally possessed the narcotics when she chose to carry them on her person." Id. While Morris suffered a physical disability, as opposed to appellant's legal disability in the instant case, the reasoning in Morris persuades us to come to the same conclusion - that appellant committed the requisite voluntary act.

[4] Even under the minority view, as stated in Tippetts, the Court could find that it was reasonably foreseeable that when appellant concealed drugs on his person, he would be transported to jail. It may be inferred that a person intends the natural and probable

B.  Fifth Amendment

Appellant's final contention is that Code § 53.1-203(5) violates his Fifth Amendment right against self-incrimination because he was faced with the choice of either admitting to the criminal act of possessing cocaine or facing a further charge of possessing contraband inside a correctional facility.

The Fifth Amendment to the United States Constitution provides, in pertinent part, that "no person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V; Husske v. Commonwealth, 252 Va. 203, 214, 476 S.E.2d 920, 927 (1996).  Although the Fifth Amendment provides a shield against compelled self-incrimination, "neither the text nor the spirit of the Fifth Amendment confers a privilege to lie.  'Proper invocation of the Fifth Amendment privilege against compulsory self-incrimination allows a witness to remain silent, but not to swear falsely.'"  Brogan v. United States, 522 U.S. 398, 404-05 (1998) (quoting United States v. Apfelbaum, 445 U.S. 115, 117 (1980)).  "'The Fifth Amendment does not insulate a defendant from all difficult choices that are presented during the course of criminal proceedings, or even from all choices that burden the exercise or encourage waiver of the Fifth Amendment's right against self-incrimination.'"  Doss v. Commonwealth, 23 Va. App. 679, 687-88, 479 S.E.2d 92, 96-97 (1996) (quoting United States v. Frazier, 971 F.2d 1076, 1080 (4th Cir. 1992)).  "'Not every burden on the exercise of a constitutional right, and not every pressure or encouragement

---

consequences of his acts.  Schmitt v. Commonwealth, 262 Va. 127, 145, 547 S.E.2d 186, 198-99 (2001); Kelly v. Commonwealth, 8 Va. App. 359, 373-75, 382 S.E.2d 270, 278-79 (1989).  Thus, it could be argued that it is reasonably foreseeable that a person who engages in criminal conduct, especially a person with an outstanding arrest warrant, may be apprehended by the police and taken to jail.  See State v. Thaxton, 79 P.3d 897, 899-90 (Or. Ct. App. 2003) (reversing the defendant's conviction on other grounds, the Oregon Court of Appeals held at the time that defendant hid marijuana in his sock, it was reasonably foreseeable that he would be arrested and taken to jail while in possession of the marijuana).

to waive such a right, is invalid.'" Id. at 688, 479 S.E.2d at 97 (quoting Corbitt v. New Jersey, 439 U.S. 212, 218 (1978)).

Further, "[t]he Fifth Amendment . . . only prohibits the use of a witness' statements which are the product of compulsion . . . ." Husske, 252 Va. at 214, 476 S.E.2d at 927.

> "[A] witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant," and, "if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution."

Venable v. Commonwealth, 48 Va. App. 380, 386, 632 S.E.2d 1, 4 (2006) (quoting Minnesota v. Murphy, 465 U.S. 420, 426 (1984)).

"The criminal process includes many situations which require a defendant to make difficult judgments regarding which course to follow. . . . Sometimes the choices faced by a defendant may have the effect of discouraging the exercise of constitutional rights but that does not mean such choices are prohibited." Canas, 597 N.W.2d at 496 (citing State v. Elliot, 557 N.W.2d 887 (Iowa 1996) (holding the defendant was not impermissibly denied his Fifth Amendment rights for failure to reveal a firearm on his person after arrest—discovery of which led to concealed weapons charge once the defendant was removed from his property)); accord J.D. v. Commonwealth, 42 Va. App. 329, 341, 591 S.E.2d 721, 727 (2004) (holding the defendant's Fifth Amendment rights were not violated where he was asked about thefts by school officials and faced severe punishments for failing to answer officials' questions) (citing Doss, 23 Va. App. at 687-88, 479 S.E.2d at 96-97) (holding the defendant's Fifth Amendment rights were not violated when the trial court offered to suspend the defendant's sentence if he turned over a weapon used in the underlying crime, when the defendant denied its existence under oath); see also Husske, 252 Va. at 214, 476 S.E.2d at 927 (use of statements by the defendant, admitting to rape, made during mental heath treatment program,

imposed as a condition of the defendant's suspended sentence, did not violate the defendant's right against self-incrimination).

In line with this reasoning, the majority of courts in other jurisdictions have rejected defendants' Fifth Amendment claims with regards to introduction of contraband into a correctional facility. A defendant's decision not to reveal drugs concealed on his person does not "somehow absolve him of responsibility for his actions on the theory that providing him an opportunity to choose between admitting to possession of the [drug] and being charged with introducing that substance into the jail violates the self-incrimination clause of the Fifth Amendment." Alvarado, 200 P.3d at 1042. See also State v. Carr, No. M2007-01759-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 753, at *14-15 (affirming the defendant's conviction for possession of contraband inside a correctional facility, the court held the defendant's Fifth Amendment privilege permitted her to remain silent, but did not protect her from the consequences of lying to a law enforcement officer) (citing Ross, 76 Cal. Rptr. 3d at 481-82).

Under the circumstances of this case, we cannot say appellant was compelled to incriminate himself. Rather, appellant made a choice not to disclose the drugs concealed on his person. In making such a choice, appellant risked later discovery of the drugs and the penalties that accompany carrying drugs into the jail. However, appellant also faced the possibility that the drugs would not be discovered. Thus, appellant's choice may have had the effect of discouraging the exercise of his constitutional right against self-incrimination, but that does not mean such choice was prohibited. Appellant was not presented with a "Hobson's choice" but rather with a "dilemma," or a choice between two options of nearly equal value. Since no offer of constitutional implication was presented to the appellant by the government in the exercise of

appellant's choice, and because appellant created his own dilemma, we cannot conclude that there was any constitutional violation.

### III. CONCLUSION

We find that the legislative history and relevant legal analysis on the issues presented cause us to reach the inevitable conclusion that the conduct prescribed by Code § 53.1-203(5) is one of strict liability. Further, where appellant was warned about the consequences of taking drugs into a correctional facility and chose not to disclose the presence of those drugs before entering the facility, we hold he voluntarily possessed the drugs inside the correctional facility. Finally, appellant's decision not to disclose the presence of drugs does not violate his Fifth Amendment right against self-incrimination. For these reasons, appellant's conviction for violating Code § 53.1-203 is affirmed.

Affirmed.