COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Friedman and Raphael
Argued at Lexington, Virginia


SHEMON DEVONTE CLAYTON

v.      Record No. 1246-21-3

COMMONWEALTH OF VIRGINIA
                                                        OPINION BY
SHEMON DEVONTE CLAYTON, A/K/A            JUDGE RICHARD Y. ATLEE, JR.
  SHEMON DEVANTE CLAYTON                   SEPTEMBER 13, 2022


v.      Record No. 1247-21-3

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

M. Lee Smallwood, II, Deputy Public Defender, for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellee.


Following a bench trial, the Circuit Court of the City of Danville ("trial court") convicted

appellant Shemon Devonte Clayton of possession of an unlawful chemical compound by a prisoner,

in violation of Code § 53.1-203(5). Clayton argues that the evidence was insufficient to "establish

that he was in knowing possession of a chemical compound." Clayton also challenges the trial

court's revocation of his previously suspended sentences. He contends that he is not guilty of the

possession offense that served as the basis of the violation of the terms of his suspended sentences.

Because Code § 53.1-203(5) is a strict liability offense, we disagree and affirm the decision of the

trial court.

## I. BACKGROUND

"Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." *Vay v. Commonwealth*, 67 Va. App. 236, 242 (2017) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 629 (2009)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

Clayton was incarcerated in the Danville Adult Detention Center. On April 24, 2020, Corrections Officer Fussell observed Clayton throw a "wad of paper" from his cell towards another cell. The paper did not make it all the way to the other cell, which was on the other side of the hallway. Officer Fussell picked up the wad of paper and found a "leafy substance" inside. She called the police.

When Officer Daily from the Danville Police Department arrived, Officer Fussell gave him the "rolled-up piece of paper containing a green leafy substance." He packaged and secured the substance. Later, Danville Police Department Detective Wright submitted the substance for analysis. Chemical analysis confirmed that the substance in the paper was an unlawful chemical compound, more specifically a synthetic cannabinoid.

Clayton was indicted and tried for possession of an unlawful chemical while a prisoner. At trial, Clayton moved to strike the evidence, arguing that the Commonwealth failed to prove that Clayton was aware of what was inside the paper. The trial court denied the motion.

Clayton testified on his own behalf. He denied throwing the paper. He testified that there were other people in the area near him, and while he saw it "being tossed" across the hallway, he

did not know who threw the paper. Clayton testified that Officer Fussell "just picked [him] out of the blue." He also denied having any knowledge of what was in the paper.

After the close of evidence, Clayton renewed his motion to strike. Clayton also argued that he did not throw the paper. The trial court denied the motion, and it found Clayton guilty. This appeal followed.

## II. ANALYSIS

### A. *Standard of Review*

"When the sufficiency of the evidence is challenged on appeal, '[t]his Court "must examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it."'" *Turner v. Commonwealth*, 65 Va. App. 312, 330 (2015) (alteration in original) (quoting *Commonwealth v. McNeal*, 282 Va. 16, 20 (2011)). To the extent the issue requires statutory construction, we review the trial court's ruling *de novo*. *Spratley v. Commonwealth*, 298 Va. 187, 193 (2019).

### B. *Code § 53.1-203(5) is a strict liability offense.*

Clayton argues that the trial court erred in finding him guilty because the evidence was insufficient to establish that "he was in knowing possession of a chemical compound."

Code § 53.1-203(5) provides, "It shall be unlawful for a prisoner in a state, local or community correctional facility or in the custody of an employee thereof to . . . [p]rocure, sell, secrete or have in his possession any chemical compound which he has not lawfully received . . . ." Clayton acknowledges our holding in *Herron v. Commonwealth*, 55 Va. App. 691 (2010), which established that Code § 53.1-203(5) sets forth a strict liability offense. *Id.* at 704. But he argues that the facts of his case mandate a different application of the statute. We disagree.

In *Herron*, the defendant was arrested and taken into jail. *Id.* at 695. When he was searched at the jail, cocaine was discovered concealed on his person. *Id.* He argued that he

should not have been convicted under Code § 53.1-203(5) because the Commonwealth had failed to prove that he intended to bring the cocaine into the jail. *Id.* at 697. Our decision relied on the Supreme Court's holding in *Esteban v. Commonwealth*, 266 Va. 605 (2003), where the Supreme Court noted that

> [t]he law is clear that the legislature may create strict liability offenses as it sees fit, and there is no constitutional requirement that an offense contain a *mens rea* or *scienter* element. Thus, courts construe statutes and regulations that make no mention of intent as dispensing with it and hold that the guilty act alone makes out the crime.

*Herron*, 55 Va. App. at 697 (quoting *Esteban*, 266 Va. at 609). Based on *Esteban*, we concluded that Code § 53.1-203(5) did not contain an "intent requirement." *Id.* at 698. We also recognized that the legislative intent of Code § 53.1-203(5) conflicted with an intent requirement because "[a]ny introduction of a controlled substance into a correctional facility threatens the successful rehabilitation of the prisoners in that facility, compromises the health of the prisoners, and threatens the safety of those who work in that facility." *Id.* Consequently, we refused to read an intent requirement into the statute, and we held that Code § 53.1-203(5) sets forth a strict liability offense. *Id.* at 698, 704.

Clayton argues that *Herron* is inapplicable to the facts of his case because it dealt with someone bringing drugs into a correctional facility, whereas he had possession "while already inside the institution." He contends that *Herron* was based solely on the legislative intent of the statute to prevent the "introduction" of controlled substances into correctional facilities. This argument is without merit.

Clayton focuses on *Herron*'s use of the word "introduction" in isolation. But the danger that Code § 53.1-203(5) seeks to prevent is not simply the "introduction" of these substances—it is their *presence* in the correctional facility, since that is what "threatens the successful

- 4 -

rehabilitation of the prisoners in that facility, compromises the health of the prisoners, and threatens the safety of those who work in that facility." *Herron*, 55 Va. App. at 698. Introduction of the drugs, as we dealt with in *Herron*, is just one aspect of preventing the ultimate danger of drugs *being in* the correctional facility. Whether a prisoner possesses them while bringing them into the correctional facility or whether he possesses them while already in the correctional facility is irrelevant to the object of the statute.[1]

Further, our decision in *Herron* did not rely solely on the legislative intent. Because the express language of Code § 53.1-203(5) does not include an intent requirement, we relied on *Esteban*'s holding that "courts construe statutes and regulations that make no mention of intent as dispensing with it." *Id.* at 697 (quoting *Esteban*, 266 Va. at 605).

As a published opinion of this Court, *Herron* is "binding on us and controls our resolution of this issue." *Vay*, 67 Va. App. at 257; *see also Butcher v. Commonwealth*, 298 Va. 392, 397 n.6 (2020) ("Under the 'rule of interpanel accord,' a decision of one panel of the Court of Appeals '"becomes a predicate for application of the doctrine of stare decisis" and cannot be overruled except by the Court of Appeals sitting en banc or by the Virginia Supreme Court.'" (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73 (2003))). Even if *Herron* did not apply here, we are still bound by the Supreme Court's holding in *Esteban*. *See O'Malley v. Commonwealth*, 66 Va. App. 296, 301 (2016) ("[W]e are bound by the decisions of the Supreme Court of Virginia and are without authority to overrule [them]." (alterations in original) (quoting *Roane v. Roane*, 12 Va. App. 989, 993 (1991))). Accordingly, Code § 53.1-203(5) is a strict liability offense, and the Commonwealth was not required to prove Clayton had knowing

---

[1] Nor does it make a difference to the language of the statute. Code § 53.1-203(5) prohibits the possession of a chemical compound; it makes no distinction between the different ways a prisoner may have come into possession of the chemical compound.

possession of the chemical compound.  Therefore, the trial court did not err in finding the evidence sufficient to convict.

Because we affirm Clayton's conviction on the possession of a chemical compound charge, we likewise affirm the trial court's decision to revoke his suspended sentences.  *See Patterson v. Commonwealth*, 12 Va. App. 1046, 1049-50 (1991).

### III. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

*Affirmed.*

Raphael, J., concurring.

I agree that our decision in *Herron v. Commonwealth*, 55 Va. App. 691 (2010), compels us to affirm Clayton's conviction under Code § 53.1-203(5) for the unlawful possession of a chemical compound by a prisoner. *Herron* squarely held that Code § 53.1-203(5) is a "strict liability" offense because "nothing in Code § 53.1-203 requires that the Commonwealth prove appellant's specific intent." *Id*. at 697-98. *Herron* relied on our Supreme Court's decision in *Esteban v. Commonwealth*, 266 Va. 605 (2003), which held that Code § 18.2-308.1(B) imposed strict liability in prohibiting the possession of a firearm on public-school property without regard to the defendant's intent. *Id.* at 609-10.

I write separately to suggest that, in an appropriate case, the parties should request the Supreme Court of Virginia to reconsider the rationale in *Esteban*. *Esteban* did not address whether and when courts should apply a presumption of *mens rea* when a statutory offense fails to specify a state-of-mind requirement. By not requiring a presumption of *mens rea* for statutory felonies, *Esteban* appears to make Virginia an outlier compared to other jurisdictions. As the law in other jurisdictions has developed quite a bit since *Esteban* was decided, the time may be ripe for the methodology employed in *Esteban* to be reevaluated.

I.

"Few areas of criminal law pose more difficulty than the proper definition of the *mens rea* required for any particular crime." *United States v. Bailey*, 444 U.S. 394, 403 (1980). "[C]lear analysis requires that the question of the kind of culpability required to establish the commission of an offense be faced separately with respect to each material element of the crime[.]" *Id.* at 406 (alterations in original) (quoting Am. L. Inst., *Model Penal Code* § 2.02, *Comments* 123 (Tent. Draft No. 4, 1955)). The potential choices along the culpability spectrum are purpose, knowledge, recklessness, negligence, or strict (or "absolute") liability. *Id.* at 404;

- 7 -

*see also Model Penal Code* §§ 2.02(2), 2.05(1)(b) (Am. L. Inst. 1985). Yet Congress and State legislatures frequently fail to specify the applicable state-of-mind requirement for some or all of the elements of an offense.[2]

"For several centuries (at least since 1600) the different common law crimes have been so defined as to require, for guilt, that the defendant's acts or omissions be accompanied by one or more of the various types of fault (intention, knowledge, recklessness or—more rarely— negligence); a person is not guilty of a common law crime without one of these kinds of fault." 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.5 (3d ed. 2021). As Blackstone famously put it, "to constitute a crime against human law, there must be, first, a vicious will; and secondly, an unlawful act consequent upon such vicious will." 4 William Blackstone, *Commentaries* *21 (1769). In Blackstone's time, "an unwarrantable act without a vicious will [was] no crime at all." *Id.*

Beginning in the 20th century, however, legislatures sometimes created strict-liability offenses, "unaccompanied by fault." LaFave, *supra*, § 5.5. Yet sometimes a statute simply omitted a state-of-mind requirement, raising questions about whether strict liability was intended.

The United States Supreme Court and most of our sister States have applied a presumption of *mens rea* when a statute fails to specify a state-of-mind requirement. The seminal federal case is *Morissette v. United States*, 342 U.S. 246 (1952), which involved a

---

[2] *E.g.*, Shon Hopwood, *Two Sides of the Same Interpretive Coin: The Presumption of Mens Rea and the Historical Rule of Lenity*, 53 Ariz. St. L.J. 507, 507-08 (2021) ("Although the concept of a guilty mind and moral culpability has been foundational in criminal law for centuries, Congress often fails to clarify if and when a *mens rea* element applies to all the elements of a particular offense."); Eric A. Johnson, *Rethinking the Presumption of Mens Rea*, 47 Wake Forest L. Rev. 769, 770 (2012) ("Legislatures routinely fail to identify the culpable mental states associated with particular objective elements of crimes.").

prosecution under 18 U.S.C. § 641, making it unlawful for a person to "knowingly convert[] to his use . . . any . . . thing of value of the United States," a felony punishable by a prison term of up to ten years. *Id.* at 248 n.2. After unsuccessfully hunting for deer on federal land, Morissette harvested spent bomb casings that had been piled in heaps, "exposed to the weather and rusting away." *Id*. at 247. Morissette "had no intention of stealing" them "but thought the property was abandoned, unwanted and considered of no value to the Government." *Id.* at 248. Still, the jury returned a guilty verdict and the court of appeals upheld the conviction, ruling that "this particular offense requires no element of criminal intent." *Id.* at 249-50.

The Supreme Court reversed. Writing for the Court, Justice Jackson emphasized the fundamental importance of *mens rea* in the British and American justice systems. *Mens rea* is not some "provincial or transient notion" but is "as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil." *Id.* at 250. The background assumption of *mens rea* was so fundamental that, as State legislatures in the 19th century codified common-law crimes, sometimes omitting a state-of-mind requirement, courts "assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation." *Id.* at 252. Indeed, the Supreme Court of Virginia said exactly that in 1884: "whenever a statute makes any offence [a] felony, it incidentally gives it all the properties of a felony at common law." *Parrish v. Commonwealth*, 81 Va. 1, 14 (1884) (quoting J. A. G. Davis, *Treatise on Criminal Law, with an Exposition of the Office and Authority of Justices of the Peace in Virginia* 156 (1838)), *overruled in part on other grounds*, *Fortune v. Commonwealth*, 133 Va. 669, 688 (1922).[3]

---

[3] Notably, the Davis treatise quoted in *Parrish* cited Blackstone's recognition that no crime could exist without a "vicious will." *See* Davis, *supra*, at n."s."

Accordingly, *Morissette* explained that federal courts should not assume that Congress intends to eliminate intent as an element of "serious crimes" absent a "clear command" or "clear expression." 342 U.S. at 254 n.14. As the Court more recently put it, "when we interpret criminal statutes, we normally 'start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state.'" *Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022) (quoting *Rehaif v. United States*, 139 S. Ct. 2191, 2195 (2019)). Thus, the Court has "interpreted statutes to include a scienter requirement . . . where the statutory text is silent on the question." *Rehaif*, 139 S. Ct. at 2197. It has also "interpreted statutes to include a scienter requirement even where 'the most grammatical reading of the statute' does not support one." *Id.* (quoting *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 70 (1994)). "The 'central thought' is that a defendant must be 'blameworthy in mind' before he can be found guilty, a concept courts have expressed over time through various terms such as *mens rea*, scienter, malice aforethought, guilty knowledge, and the like." *Elonis v. United States*, 575 U.S. 723, 734 (2015) (quoting *Morissette*, 342 U.S. at 252).[4]

Like the United States Supreme Court, a majority of States also apply a presumption of *mens rea* when statutes are silent on the applicable state-of-mind requirement. Some apply that presumption by statute while others do so by common-law tradition. At least twenty-three States have adopted a strong version of the *mens rea* presumption, inferring a state-of-mind requirement unless the legislature "plainly," "clearly," "expressly," or "decisively" shows that it

---

[4] One scholar argues that the *mens rea* presumption functions doctrinally in the "mezzanine" between fundamental constitutional law and statutory positive law. *See* Erik Luna, *Mezzanine Law: The Case of a Mens Rea Presumption*, 53 Ariz. St. L.J. 565, 569, 590-92, 600, 602 (2021).

intended a strict-liability offense.[5]  At least four States have recognized a *mens rea* presumption, though without mentioning a clear-statement requirement.[6]  Notably, the Model Penal Code specifies that a statute may be interpreted to create a strict-liability offense only "insofar as a legislative purpose to impose absolute liability for such offenses or with respect to any material element thereof *plainly appears*."[7]

---

[5] *See* Ala. Code § 13A-2-4(b) ("A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, states a crime of mental culpability."); *State v. Jennings*, 722 P.2d 258, 262 (Ariz. 1986) (requiring "clear legislative intent"); Ark. Code Ann. § 5-2-204(c)(2) ("clearly indicates a legislative intent to dispense with any culpable mental state requirement"); Del. Code Ann. tit.11, § 251(c)(2) ("plainly appears"); Haw. Rev. Stat. § 702-212 (same); 720 Ill. Comp. Stat. § 5/4-9 ("clearly indicates"); *State v. Keihn*, 542 N.E.2d 963, 967 (Ind. 1989) ("decisively indicates"); Kan. Stat. Ann. 21-5202(d) ("a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element"); Ky. Rev. Stat. Ann. § 501.050(2) ("clearly indicates"); Me. Rev. Stat. Ann. tit. 17-A, § 34(4)(E) ("expressly reflects"); *Commonwealth v. Murphy*, 173 N.E.2d 630, 632 (Mass. 1961) ("clear and unambiguous language"); Mich. Comp. Laws § 8.9(2) ("plainly imposes strict criminal liability"); *State v. Arkell*, 672 N.W.2d 564, 568 (Minn. 2003) ("Strict liability statutes are generally disfavored, and legislative intent to impose strict criminal liability must be clear."); Mo. Ann. Stat. § 562.026(2) (permitting strict liability only if "imputation of a culpable mental state to the offense is clearly inconsistent with the purpose of the statute defining the offense or may lead to an absurd or unjust result"); Mont. Code Ann. § 45-2-104 ("clearly indicates"); N.J. Stat. Ann. § 2C:2-2(c)(3) ("clearly indicating"); N.Y. Penal Law § 15.15(2) ("clearly indicating"); N.D. Cent. Code § 12.1-02-02(2) ("provide explicitly"); Ohio Rev. Code Ann. § 2901.21(B) ("plainly indicates"); Or. Rev. Stat. § 161.105(1)(b) ("clearly indicates"); 18 Pa. Cons. Stat. § 305(a)(2) ("plainly appears"); Tenn. Code Ann. § 39-11-301(b) ("A culpable mental state is required . . . unless the definition . . . plainly dispenses with a mental element"); Tex. Penal Code § 6.02(b) ("plainly dispenses").

[6] Alaska Stat. § 11.81.600(b) ("no culpable mental state must be proved . . . (2) if a legislative intent to dispense with the culpable mental state requirement is present"); *People v. Rubalcava*, 1 P.3d 52, 58 (Cal. 2000) (for an offense criminalizing "'traditionally lawful conduct,' we construe the statute to contain a 'knowledge' element" (quoting *People v. Coria*, 985 P.2d 970, 978 (Cal. 1999))); *Gorman v. People*, 19 P.3d 662, 665 (Colo. 2000) (en banc) ("We have held that legislative silence on the element of intent in a criminal statute is not to be construed as an indication that no culpable mental state is required.  Rather, the requisite mental state may be implied from the statute." (citation omitted)); *Dawkins v. State*, 547 A.2d 1041, 1047 (Md. 1988) (noting "contemporary view that disfavors strict liability offenses").

[7] *Model Penal Code*, *supra*, § 2.05(1)(b) (emphasis added).  And even then, a strict liability offense may be punished only as a "violation."  *Id*. at § 2.05(2)(a).  "Violations are not,

To be sure, Congress and State legislatures are not constitutionally disabled from enacting strict-liability crimes. *See Smith v. California*, 361 U.S. 147, 150 (1959) ("[I]t is doubtless competent for the States to create strict criminal liabilities by defining criminal offenses without any element of scienter—though . . . there is precedent in this Court that this power is not without limitations."); *Esteban*, 266 Va. at 609 ("[T]here is no constitutional requirement that an offense contain a *mens rea* or *scienter* element.").

In some instances, however, statutes that impose criminal liability without adequate notice that otherwise innocent conduct has been criminalized have been held to be unconstitutional. *See Lambert v. California*, 355 U.S. 225, 228-29 (1957) (holding that it violated due process for a defendant to be convicted under a failure-to-register law when the defendant lacked notice that registration was required). Our Supreme Court in *Maye v. Commonwealth*, 213 Va. 48 (1972) (per curiam), saved the larceny-after-bailment statute from constitutional invalidity by implying a *mens rea* requirement that was not found in the statutory text. *See id.* at 49 ("A claim that a statute on its face contains no requirement of Mens rea or Scienter is no ground for holding the statute unconstitutional since such requirement will be read into the statute by the court when it appears the legislature implicitly intended that it must be proved." (citing *Morissette*, 342 U.S. at 250)). But four years later, the Court declared unconstitutional a statute criminalizing the failure to pay wages when due, declining to save it by implying a *mens rea* requirement. *See Makarov v. Commonwealth*, 217 Va. 381, 385-86 (1976) (explaining that *Maye* involved "a statute specifically dealing with larceny, a crime which presupposes a Mens rea. But here the statute on its face deals with a naked civil debt and we

---

however, crimes . . . and cannot result in a sentence of probation or imprisonment." *Id*. at 281, expl. note.

cannot say the General Assembly implicitly meant to include proof of an intent to defraud as an essential element of the offense.").

The United States Supreme Court has "sometimes declined to read a scienter requirement into criminal statutes," but that has typically occurred in "cases involving statutory provisions that form part of a 'regulatory' or 'public welfare' program and carry only minor penalties." *Rehaif*, 139 S. Ct. at 2197. "Certainly, the cases that first defined the concept of the public welfare offense almost uniformly involved statutes that provided for only light penalties such as fines or short jail sentences, not imprisonment in the state penitentiary." *Staples v. United States*, 511 U.S. 600, 616 (1994); *see, e.g.*, *United States v. Dotterweich*, 320 U.S. 277, 280-81 (1943) (upholding misdemeanor conviction under federal statute that prohibited shipping "adulterated or misbranded" drugs, even though the statute "dispense[d] with the conventional requirement for criminal conduct—awareness of some wrongdoing"). In other words, "absent a clear statement from Congress that *mens rea* is not required," the United States Supreme Court has been reluctant to "apply the public welfare offense rationale to interpret any statute defining a felony offense as dispensing with *mens rea*." *Staples*, 511 U.S. at 618 (dictum).

Synthesizing those ideas, Justice Scalia and Professor Garner proposed a *mens rea* presumption as Canon 50 in their 2012 treatise. *See* Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 303 (2012). Their "*Mens Rea* Canon" combines the idea that statutory offenses that resemble common-law offenses are presumed to incorporate common-law *mens rea*, while statutory offenses unfamiliar to the common law are presumed to require culpability if they impose serious punishment:

> A statute creating a criminal offense whose elements are similar to those of a common-law crime will be presumed to require a culpable state of mind (*mens rea*) in its commission. All statutory

- 13 -

> offenses imposing substantial punishment will be presumed to require at least awareness of committing the act.

*Id.*

## II.

Virginia courts should be careful not to read *Esteban* as announcing a blanket rule that *any* criminal statute that fails to mention a culpability requirement necessarily imposes strict liability. The question in *Esteban* was whether a prosecution under Code § 18.2-308.1(B) for possessing a firearm on school grounds required the Commonwealth to prove that the defendant—there, a teacher—knew that she possessed the handgun that was found in her purse. This Court held that, assuming without deciding that such knowledge was required, it was harmless error not to instruct the jury about any knowledge requirement because there was ample evidence that Esteban, in fact, knew that she had the weapon at school. *See Esteban v. Commonwealth*, No. 0028-01-4, slip op. at 7-9, 2002 WL 1967941, at *2-3 (Va. Ct. App. Aug. 27, 2002), *aff'd on other grounds*, 266 Va. 605 (2003).

Affirming on different grounds, however, the Supreme Court ruled that Code § 18.2-308.1(B) operates as a strict-liability offense, making it unlawful for any person to possess a firearm on school property, regardless of whether the defendant knows about the weapon. 266 Va. at 610. Esteban argued that the Court should apply the *mens rea* presumption from *Parrish* and federal cases that, when the legislature codifies a common-law crime, it incorporates common-law *mens rea* elements. *Id.* at 608-09. But the Court distinguished *Parrish*, explaining that "Code § 18.2-308.1 is purely a statutory offense, there being no equivalent common law crime." *Id.* at 609. Continuing, the Court reasoned that requiring *mens rea* "would defeat the statutory purpose, which is to criminalize the introduction of firearms into a school environment." *Id.* at 610.

- 14 -

Because *Esteban* held that possessing firearms on school grounds is not analogous to a common-law offense, the case does not overrule *Parrish* to the extent that statutes creating crimes analogous to common-law offenses implicitly incorporate common-law *mens rea* requirements. *Parrish*, 81 Va. at 14; *Morissette*, 342 U.S. at 252. So at least to that extent, the *mens rea* presumption from *Parrish* survives.

But *Esteban*'s failure to apply a *mens rea* presumption when a statutory crime carries serious punishment poses a significant concern. Possessing a firearm on school grounds while school is in session is "a Class 6 felony," Code § 18.2-308.1(B), punishable by up to five years in prison, Code § 18.2-10(f). Under the presumption applied in federal court, by the majority of States, and by Justice Scalia and Professor Garner, that serious punishment should have triggered a presumption of *mens rea*. Yet the Court applied no presumption at all.

What is more, *Esteban* contains this sentence that—when read in isolation—may suggest that if a statute criminalizes an offense unknown to the common law and references no state-of-mind requirement, it necessarily imposes strict liability, even for felonies: "Thus, courts construe statutes and regulations that make no mention of intent as dispensing with it and hold that the guilty act alone makes out the crime." 266 Va. at 609 (citing *Morissette*, 342 U.S. at 256, 258). The Court's citation to *Morissette* is notable because *Morissette* stands for the *opposite* proposition. *Morissette* distinguished strict-liability crimes involving "public welfare offenses"—where "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation," 342 U.S. at 255-56—from serious crimes like the one at issue there (converting the property of the United States government, punishable by imprisonment for up to ten years, *id.* at 248 n.2), for which *mens rea* should be presumed, *id.* at 263. Though citing *Morissette*, *Esteban* did not capture its essential teaching regarding the critical importance of the *mens rea* presumption for serious crimes.

In fairness, while that single sentence of *Esteban*, standing alone, may suggest that a statute without any state-of-mind requirement imposes strict liability, other language in the opinion points in a different direction. *Esteban* went on to suggest that a strict-liability rule would *not* necessarily apply in all cases in which the General Assembly failed to specify the state-of-mind requirement; rather, the analysis requires a case-by-case approach. Thus, the "statute must be construed with reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it." 266 Va. at 609. Unless and until the Supreme Court of Virginia revisits this issue, however, the troublesome sentence in *Esteban* may breed mischief, suggesting that Virginia criminal statutes that fail to specify a *mens rea* requirement impose strict liability, regardless of the severity of punishment.

Requiring a presumption of *mens rea*—as other jurisdictions do—would not mean that the presumption is irrebuttable. A court could still conclude that the legislature clearly intended a crime to be a strict-liability offense. *See* LaFave, *supra*, § 5.5(a) (describing seven factors that various courts have considered when evaluating whether the legislature intended a strict-liability offense); *see also In re Jorge M.*, 4 P.3d 297, 301 (Cal. 2000) (finding those factors "useful"); *State v. Keihn*, 542 N.E.2d 963, 967 (Ind. 1989) (same).

But a *mens rea* presumption can make a huge difference, and it could well have led the Supreme Court in *Esteban* to reject a strict-liability interpretation of Code § 18.2-308.1(B). The Supreme Court of Minnesota, for instance, held that Minnesota's statute criminalizing possession of weapons at school was not a strict-liability offense, despite that the statute omitted any state-of-mind requirement. *In re C.R.M.*, 611 N.W.2d 802, 808-10 (Minn. 2000). The court applied a precedent-based presumption of *mens rea*, explaining that the "rulings of the United States Supreme Court and this court . . . highlight the long[-]established principle of American criminal

jurisprudence that in common law crimes and in felony level offenses mens rea is required." *Id.* at 808. And Pennsylvania's intermediate-appellate court applied Pennsylvania's statutory *mens rea* presumption to conclude that the prohibition on possessing weapons at school was also not a strict-liability offense. *Commonwealth v. Giordano*, 121 A.3d 998, 1005-06 (Pa. Super. Ct. 2015).

As those examples demonstrate, the presumption matters. And applying a *mens rea* presumption for serious crimes may better jibe with the common-sense intuition that people should not be subject to lengthy prison terms for conduct that they did not know was wrongful. Perhaps confirming that intuition, our General Assembly amended Code § 18.2-308.1 in 2015 to require that the accused "knowingly" possess a weapon on school grounds. *See* 2015 Va. Acts ch. 289.

Like the felony at issue in *Esteban*, the violation of Code § 53.1-203(5) at issue here is also a Class 6 felony, punishable by up to a five-year prison term. And not requiring proof that the prisoner knowingly possessed an unauthorized chemical substance poses a risk of unfair prosecutions. At oral argument, the Commonwealth conceded that a prisoner could be prosecuted for unknowingly possessing drugs that were surreptitiously planted by another inmate. It is not difficult to see how such situations could arise. A surprise search of a cell could prompt one prisoner to stash his drugs in his cellmate's mattress or clothing. Or a prisoner might intentionally plant drugs on another prisoner to incriminate him. It would be no defense that the accused had no knowledge of the drugs and engaged in no morally blameworthy conduct.

That possibility is disturbing. "Engrained in our concept of due process is the requirement of notice. . . . [T]he principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case." *Lambert*, 355 U.S. at 228. Without a *mens rea* requirement for the crucial element of

- 17 -

these offenses that makes the defendant's conduct wrongful—possessing a gun or possessing narcotics—there is no way "to separate wrongful conduct from 'otherwise innocent conduct.'" *Elonis*, 575 U.S. at 736 (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000)). "As Holmes wrote in *The Common Law*, 'A law which punished conduct which would not be blameworthy in the average member of the community would be too severe for that community to bear.'" *Lambert*, 355 U.S. at 229 (quoting Oliver Wendell Holmes, Jr., *The Common Law* 50 (1880)).

It is no answer to hope that law-enforcement officials will not instigate felony charges against morally blameless defendants in these scenarios. For just as we condemn a vague law because it risks creating "a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials,'" *Kolender v. Lawson*, 461 U.S. 352, 360 (1983) (quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972)), strict-liability felonies likewise empower those bringing charges to prosecute otherwise law-abiding citizens who had no idea that what they were doing was criminal.

For all these reasons, it may be worthwhile for the Supreme Court of Virginia to revisit the methodology applied in *Esteban* that we felt bound to follow in *Herron*. In an appropriate case, the parties should ask the Supreme Court to determine whether Virginia should recognize a *mens rea* presumption for serious offenses.

In summary, under the rule followed in most American jurisdictions, when a criminal offense does not specify a state-of-mind requirement, courts will presume that the legislature did not intend strict liability if the statute codifies a crime analogous to a common-law offense, or if the legislature creates a new offense that imposes a serious punishment. That presumption may be overcome if the legislature makes clear that it intends a strict-liability offense using language that satisfies the clear-statement requirement. *See, e.g.*, *supra* note 5 (collecting examples). For

the time being, however, we are bound by *Esteban* and *Herron*.  And on that basis, I concur in

the majority's opinion.