

IN THE

# Court of Appeals of Indiana

Tervarus L. Gary,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*



FILED

Jun 23 2025, 9:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

June 23, 2025

Court of Appeals Case No.
24A-CR-2712

Appeal from the
Elkhart Superior Court

The Honorable
Kristine A. Osterday, Judge

Trial Court Cause No.
20D01-2405-F5-140

**Opinion by Senior Judge Baker**
Judges Mathias and DeBoer concur.

**Baker, Senior Judge.**

# Statement of the Case

[1] Tervarus Gary appeals from his conviction of Level 5 felony possessing material capable of causing bodily injury by an inmate, contending that there is insufficient evidence to support his conviction. Agreeing that the State did not present sufficient evidence of the actus reus requirement to rebut his affirmative defense of absence of voluntariness, we reverse Gary's conviction.

# Facts and Procedural History

[2] On November 5, 2023, police were called to remove Gary from a home where he was found intoxicated by fentanyl, methamphetamine, or both. Officers who arrested him considered him to be passively noncompliant, meaning in this case that he was limp, "like a rag doll[.]" Tr. Vol. 2, p. 177. Corporal Steven Jones of the Elkhart City Police Department testified that officers had to help Gary move along and walk him out to the patrol car. And when they asked him to put his feet in the vehicle, he replied that they were, even though his feet were dangling out of the vehicle. Gary was described as "[j]ust very quiet." Tr. Vol. 3, p. 77. During a search before transporting him to the jail, the officers found that he possessed a methamphetamine pipe and seized it.

[3] Even though he was conscious, Gary's body remained limp when he arrived at the jail. Deeming him noncompliant, four officers carried him, and another officer escorted them as they walked past a search room into the booking area of the jail. The officers placed him directly into a dry cell, a cell without any water fixtures in it, without conducting a search or patting him down. Corporal Jones testified that Gary could have been restrained and searched while he was lying down as long as other officers were around, but that was not done in this case even though there were several officers there. The officers decided to wait until Gary was deemed compliant to restrain him and conduct a thorough search.

[4] At some point while in the dry cell, Gary pressed the intercom button and told the jail staff in the master control center that he had a knife and a starter kit. By starter kit, he meant a can of pepper spray and a lighter. When officers went to the window of his cell, he showed them the can of pepper spray and asked to make a phone call. The officers commanded him to place the pepper spray on the bench, kneel down facing away from the door, and put his hands behind his head. Gary refused and officers saw what appeared to be pepper spray at the base of the door. Gary testified that he was trying to force the can of pepper spray underneath the door and some pepper spray came out in the process. Nevertheless, Gary did not place the can on the bench, and the officers then used pepper spray to make Gary comply with their commands. The officers entered the cell, seized Gary's can of pepper spray and attempted to take him through a body scanner. After failed attempts to gain compliance, the officers

took him through another scanner where they discovered and seized a lighter. Roughly the same number of officers was involved in this search as were present when Gary was initially brought to the jail.

[5] The State charged Gary with Level 5 felony possessing material capable of causing bodily injury by an inmate. A jury convicted him of the charge and the trial court sentenced him to four years executed in the Department of Correction.

## Discussion and Decision

[6] Gary appeals, contending there is insufficient evidence to support his conviction, particularly the actus reus requirement. When reviewing the sufficiency of the evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses, and we respect the fact-finder's exclusive province to weigh conflicting evidence. *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010). We consider only the probative evidence and reasonable inferences therefrom that support the conviction. *Id.* We will affirm if the probative evidence and reasonable inferences from that evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

[7] To convict Gary of Level 5 felony possessing material capable of causing bodily injury by an inmate, the State was required to establish beyond a reasonable doubt that Gary knowingly or intentionally while incarcerated in a penal facility possessed a device, equipment, a chemical substance, or other material

that is used or is intended to be used in a manner that is readily capable of causing bodily injury. *See* Ind. Code § 35-44.1-3-7 (2014).

[8] Gary contends that his conviction must be reversed because he did not voluntarily possess the pepper spray in jail. "A person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense." Ind. Code § 35-41-2-1(a) (1983). And "[i]f possession of property constitutes any part of the prohibited conduct, it is a defense that the person who possessed the property was not aware of his possession for a time sufficient for him to have terminated his possession." Ind. Code § 35-41-2-1(b) (1983). Thus, though voluntariness is not a statutory element of an offense, it is a "general element of criminal behavior," *Baker v. State*, 208 N.E.3d 626, 638 (Ind. Ct. App. 2023), *trans. denied*, and it is an affirmative defense to criminal liability. *Baird v. State*, 604 N.E.2d 1170, 1176 (Ind. 1992). Therefore, if the evidence raises the issue of voluntariness, the State must prove the defendant acted voluntarily beyond a reasonable doubt. *Id..*

[9] The State argues that the outcome of this appeal is controlled by this Court's decision in *Baker v. State*. In *Baker*, a police officer stopped the driver of a truck for a seatbelt violation. While the officers were gathering information from the passengers of the truck, Baker provided false identification information. The officer eventually discovered her true identity and also discovered there was an active warrant for her arrest. After Baker and the other female passenger, who also had an active warrant for her arrest, were searched, the officer informed them that he would be taking them to the county jail and that they would be

charged with trafficking if they possessed prohibited or illegal items when they entered the jail. Both women indicated that they did not possess illegal or prohibited items.

[10] Upon arriving at the jail, there were posters and signs indicating that bringing illegal substances or paraphernalia into the jail would result in a Level 5 felony charge. After the intake process and prior to the search, an officer asked Baker if she possessed any illegal substances. Baker indicated that she did not. But during a search, the officer found a small bag of a substance suspected to be methamphetamine in Baker's pocket. Testing of the substance confirmed it was methamphetamine, and Baker was charged with Level 5 felony possession of methamphetamine at a penal facility.

[11] Baker presented several arguments on appeal. But the argument relevant to our discussion is "whether a person who possesses an illegal drug and is subsequently transported to a penal facility is in the penal facility voluntarily as to support a conviction of possession of the illegal drug in the penal facility." *Baker*, 208 N.E.3d at 638. Baker claimed that she was faced with the illusory choice of confessing to possession of methamphetamine or being charged with trafficking. *Id.* We acknowledged that "someone is not voluntarily visiting the jail after being arrested." *Id.* at 641. However, in *Baker*, as in the cases representing the majority view in other states, the evidence was sufficient because she was informed that her charges could be enhanced by possession of an illegal substance and she chose to ignore that warning. *Id.* The "criminal action in this case was failing to dispose and/or reveal the presence of the drugs

on [the individual] prior to [] transport into the jail facility." *Id.* at 640 (quoting *Herron v. Commonwealth*, 688 S.E.2d 901, 906 (Va. Ct. App. 2010)).

[12] Here, we are faced with a very different scenario. Gary was searched when he was arrested and officers found and seized a methamphetamine pipe. Officers deemed him noncompliant because he remained limp and four officers carried him into the booking area, accompanied by another officer. Instead of conducting a search while they had the numerical advantage and Gary, who was restrained, was still in the early stages of coming off of his drug-induced intoxication, the officers proceeded past the search room and placed Gary in a dry cell.

[13] He gradually reached equilibrium and realized he had items in his pocket which were not illegal to possess, but which were prohibited in a penal facility. Gary pressed the intercom button and informed the master control center that he had a knife and a "starter kit," which would be "a torch and [] spray." Tr. Vol. 2, p. 241; Tr. Vol. 3, p. 21. An officer approached his cell and asked Gary to show him what else he had on him because Gary had mentioned having something else, possibly a knife. The officer said, "Cause if you have a knife, things are going to go really south really fast." Conv. Ex. Vol. 5 (State's Ex. 1, 1:57-2:00). Gary responded, "Ok. And what? It's all my fault? You all brought me in here with that on me." *Id.* at 2:01-2:04. When Gary mentioned that officers had already searched him, the officer responded, "Cause I can make this a charge really fast. I have no problem with that." *Id.* at 2:09-2:12.

[14] At some point officers saw what they believed to be spray from a pepper spray can on the floor of the cell. And after Gary refused to place the pepper spray on the bench in his cell while bargaining for a phone call, the officers deployed pepper spray in the cell to gain his compliance. Although Gary had mentioned he had a starter kit, meaning pepper spray and a lighter, the lighter was found after the officers took him through a body scanner. And there was no evidence that he was informed prior to entering the jail that he could be charged with an offense for bringing prohibited items into the jail with him.

[15] The State argues that Gary's refusal to surrender the pepper spray after being ordered to place it on the bench is enough to rebut his affirmative defense that he did not voluntarily bring the items into the jail. We disagree. There is no evidence in the record to show that officers asked Gary if he had prohibited or illegal items in his possession prior to placing him in the dry cell. Unlike the situation in *Baker*, Gary was not given a choice to disclose the items or hide them prior to entering the jail. And his use of the starter kit as a bargaining tool to be placed in a regular cell or for a phone call would not have happened but for the officers' decision not to search him while he remained limp, restrained, and under the effects of intoxication before placing him in the dry cell.

[16] We conclude that Gary did not make the choice to enter the jail while possessing prohibited items. He volunteered that he had the items. And the "criminal action" cited in *Baker* and found in *Herron*, the failure to dispose of or disclose the presence of the items before entering the jail, is not present here. Consequently, we find the evidence insufficient and reverse Gary's conviction.

# Conclusion

[17] Having found insufficient evidence that Gary was warned and voluntarily chose to possess the prohibited items in the jail, we reverse his conviction.

[18] Reversed.

Mathias, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Christopher J. Petersen
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Daniel H. Frohman
Deputy Attorney General
Indianapolis, Indiana