COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges AtLee and Bernhard
Argued by videoconference


LEWIS EDWARD LACY

v.       Record No. 1534-24-3

COMMONWEALTH OF VIRGINIA AND
 THE CITY OF LYNCHBURG[1]

MEMORANDUM OPINION[*] BY
CHIEF JUDGE MARLA GRAFF DECKER
SEPTEMBER 9, 2025


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Frederick Watson, Judge

Eric Weathers, Assistant Public Defender (Virginia Indigent Defense
Commission, on briefs), for appellant.

Melanie D. Edge, Assistant Attorney General (Jason S. Miyares,
Attorney General; Susan L. Hartman, Senior Assistant City Attorney,
on brief), for appellees.


Following a jury trial, the court convicted Lewis Edward Lacy of misdemeanor obstruction

of justice and public intoxication in violation of Code § 18.2-460(A) and Lynchburg, Virginia,

Code § 27-10.  On appeal, Lacy contends the trial court erred in denying his motion to strike a juror

for cause.  He also claims that the court erred in refusing his proffered instruction and granting the

prosecution's instruction on public intoxication.  Last, Lacy challenges the sufficiency of the

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The summons for public intoxication identified the City of Lynchburg as the
prosecuting authority for a violation of § 27-10 of the City of Lynchburg Code of Ordinances,
with "18.2-388" in parentheses.  On appeal to this Court, Lacy moved to amend the style of the
case to add the City of Lynchburg as an appellee.  The Commonwealth did not oppose the
motion.  By counsel, the City of Lynchburg noted an appearance in the case, acknowledged
receipt of the notice of appeal and pleadings, and joined the Commonwealth's brief.
Accordingly, we grant the motion and amend the style of the case to add the City of Lynchburg
as an appellee.  In this opinion, we refer to the two prosecuting entities collectively as the
government.

evidence to support his conviction for obstructing justice. For the following reasons, we affirm the convictions.

BACKGROUND[2]

On September 29, 2021, Benjamin Fields was working at a restaurant. Near closing time that night, Fields saw a man, later identified as Lacy, outside the restaurant lying on the ground. Lacy appeared to be unconscious, and another person was "trying to wake him." About fifteen minutes later, although the restaurant was closed, Lacy tried to enter despite some employees blocking his way. Lacy struck Fields's friend, and they began fighting. Fields and his father tackled Lacy and held him for several minutes until the police arrived. Lacy was combative, incoherent, and smelled of alcohol.

Sergeant E. H. Phelps of the City of Lynchburg Police Department responded to the call for assistance at the restaurant. On arrival, the sergeant saw Fields and his father holding Lacy on the ground. Lacy was "flailing his legs," and there was an "overwhelming odor of alcohol." Sergeant Phelps tried to place Lacy in handcuffs. Fields and his father helped Phelps roll Lacy onto his front. Lacy refused the sergeant's demands to produce one of his hands.

Eventually handcuffed, Lacy continued to grab at Sergeant Phelps from behind. Other police officers arrived and helped Phelps shackle Lacy's legs. Still, Lacy continued kicking at the officers. After they got Lacy to his feet, he "went dead weight" and "had to be carried" to the police car. Lacy braced his feet against the car and pushed backward, preventing the officers

---

[2] On appeal of the jury selection and sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the government, as the prevailing party below. *See, e.g.*, *Keepers v. Commonwealth*, 72 Va. App. 17, 25 (2020) (jury selection); *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (sufficiency). However, in reviewing a trial court's ruling on a proposed jury instruction, the evidence is viewed in the light most favorable to the instruction's proponent, in this case Lacy. *See Commonwealth v. Kartozia*, ___ Va. ___, ___ (June 5, 2025). Accordingly, this opinion sets out all of the evidence relevant to the issues before the Court.

from putting him into the vehicle. Because the officers were unable to get Lacy into the car, they called for a "patrol wagon," a larger vehicle used to transport combative subjects.

The patrol wagon arrived after about twenty minutes, during which police officers held Lacy against the police car while he continued to struggle and verbally abuse them. Lacy kicked at the officers as they put him inside the patrol wagon.

Lacy was charged with the misdemeanor offenses of obstruction of justice and public intoxication. During voir dire, Juror 4 expressed a desire to "hear both sides." After further questioning, however, she conveyed that if the incident was on video, she "wouldn't hold it against" the defendant if he did not testify. Juror 4 also noted that depending on the contents of the video, she "still might [have] questions." Defense counsel later moved to strike Juror 4 for cause, but the trial court overruled the motion.

At trial, Fields, his father, and Sergeant Phelps testified against Lacy. The government also entered into evidence recordings taken from police body-worn cameras.

Testifying in his own defense, Lacy said he did not remember the interaction with the police. He denied drinking alcohol or consuming drugs that day but admitted using marijuana. According to Lacy, he was with some acquaintances and shared a drink with one of his friends that he thought was soda. He remembered getting into a car, which then had a flat tire. Lacy contended he did not remember anything after that until he woke up the next day in a jail cell.

After the presentation of the evidence, the parties discussed jury instructions. Over Lacy's objection, the court instructed the jury that to find him guilty of public intoxication, the prosecution was required to prove, as elements of the offense, that he "appeared in public" and "was in an intoxicated condition." The court refused Lacy's proposed jury instruction, which included the requirement that the government prove that he was "voluntarily in an intoxicated condition."

Lacy asked the trial court to strike the obstruction-of-justice charge, arguing that his actions did not rise to the level of impeding law enforcement. The court denied the motion.

The jury found Lacy guilty of obstruction of justice and public intoxication. He was sentenced to twelve months in jail with six months suspended for obstructing justice and received a $25 fine for public intoxication.

ANALYSIS

I. Refusal to Strike Juror for Cause

Lacy contends that the trial court erred in denying his motion to strike Juror 4 for cause.

During voir dire, the jurors agreed that Lacy was presumed innocent, his status as a defendant did not suggest he was guilty, and it was the government's burden to prove his guilt. They also acknowledged they understood that Lacy was "not required to produce any evidence." In a series of additional questions, defense counsel asked the jurors whether a person charged with a crime "has to tell their side of the story" and whether, absent such testimony, the jurors believed they could not acquit Lacy. Juror 4 responded that she "would like to hear both sides." She elaborated, "If there's only one side, then you don't get the whole story, in my mind." Juror 4 agreed with the proposition "[t]hat somebody should have to testify to defend themselves." Several other jurors echoed her sentiment.

Addressing the concern of some of the jurors "that they weren't going to hear from both sides," the prosecutor asked if "it change[d] anyone's opinion of that issue if the majority of this event is on video or on camera." The prosecutor questioned further, "So if you're able to watch a video, do you still think . . . you can find him not guilty without having heard him testify?" Juror 4 raised her hand. The prosecutor followed up by asking if it "would make any difference to [the juror] if the majority of the incident [was] on video," and Juror 4 responded in the affirmative. Attempting to further clarify, the prosecutor asked, "If the defendant doesn't testify,

would you hold it against him if you've sort of already see[n] the video?" Juror 4 responded, "Yeah, I wouldn't hold it against him. There still might be questions that I would have[,] but it just depends on what's on the video" and "[i]f it answers everything that I'm wondering."

Defense counsel made a motion to strike Juror 4 for cause. The prosecutor noted that Juror 4 said "she would not hold it against [the defendant] if he did not testify" and watching a video of the incident "would help." The prosecutor added that Juror 4 said that she did not know if it would "resolve all of her questions as to matters of fact to see a video but that she would not hold it against the [d]efendant if he did not testify." The trial court agreed with the prosecutor's recollection of Juror 4's statements and overruled the motion. Ultimately, the defense used a peremptory strike to remove Juror 4.

Lacy claims that Juror 4's voir dire "answers demonstrated that she could not give [him] a fair trial" and the trial court erred in denying his motion to strike her for cause. He suggests that Juror 4 "showed . . . she could not evaluate the case neutrally." The law in this area is well-established, and we begin our review with clear guideposts.

"[J]uror impartiality is [a question] of fact," and a trial court's decision to seat a juror "is "'entitled to great deference on appeal'" unless 'plainly wrong or unsupported by the record.'" *Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023) (quoting *Huguely v. Commonwealth*, 63 Va. App. 92, 121, 127 (2014)). Accordingly, "the trial court's exercise of judicial discretion in deciding challenges for cause will be not disturbed on appeal[] unless manifest error appears in the record." *Taylor v. Commonwealth*, 67 Va. App. 448, 455 (2017) (quoting *Jackson v. Commonwealth*, 267 Va. 178, 191 (2004)); *see Andrews v. Commonwealth*, 280 Va. 231, 256 (2010). "A manifest error occurs when the record shows that a prospective juror cannot or will not lay aside his or her preconceived opinion." *Taylor*, 67 Va. App. at 456. "In conducting our review, we consider the juror's entire *voir dire*, not merely isolated statements." *Ramos v.*

*Commonwealth*, 71 Va. App. 150, 157 (2019) (quoting *DeLeon v. Commonwealth*, 38 Va. App. 409, 413 (2002)); *accord Thomas v. Commonwealth*, 279 Va. 131, 164 (2010) (quoting *Lovitt v. Commonwealth*, 260 Va. 497, 510 (2000)).

Unquestionably, the "right to be tried by an impartial jury" is guaranteed under both the United States and Virginia Constitutions. *Northcraft v. Commonwealth*, 78 Va. App. 563, 587 (2023); *see* Code § 8.01-358 (outlining the process for safeguarding this right). "For that guarantee to be effective, persons accused of violating criminal laws must be provided with 'an impartial jury drawn from a panel . . . free from exceptions.' Every prospective juror must stand indifferent to the cause . . . ." *Taylor v. Commonwealth*, 61 Va. App. 13, 22-23 (2012) (quoting *Breeden v. Commonwealth*, 217 Va. 297, 300 (1976)). And the guarantee requires that "any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused." *Northcraft*, 78 Va. App. at 587 (quoting *Breeden*, 217 Va. at 298). "If . . . a reasonable doubt [exists about] whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion." *Taylor*, 61 Va. App. at 23 (quoting *Breeden*, 217 Va. at 298); *accord Green v. Commonwealth*, 262 Va. 105, 118 (2001) (quoting *Wright v. Commonwealth*, 73 Va. 941, 943 (1879)). "These principles must be strictly applied, and when a prospective juror equivocates about whether he or she has formed a fixed opinion, the prospective juror should be stricken by the trial court." *Taylor*, 61 Va. App. at 23.

For a juror's opinion to disqualify her, however, it must be one of such a "fixed character [that it] repels the presumption of innocence in a criminal case" and causes the juror to believe that "the accused stands condemned already." *Northcraft*, 78 Va. App. at 589 (emphasis omitted) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)); *accord Justus v. Commonwealth*, 220 Va. 971, 976 (1980) (quoting *Slade v. Commonwealth*, 155 Va. 1099, 1106 (1931)). Ultimately, therefore, "the 'test of impartiality is whether the venireperson can lay aside

the preconceived views and render a verdict based solely on the law and evidence presented at trial.'" *Ramos*, 71 Va. App. at 157 (quoting *Griffin v. Commonwealth*, 19 Va. App. 619, 621 (1995)).

The trial court—not the appellate court—has the opportunity to see and hear each prospective juror respond to questions posed during voir dire. *See Andrews*, 280 Va. at 256 ("[I]t is the trial judge who sees and hears the prospective juror and, thus, is in the best position to weigh her 'inflections, tone, and tenor of the dialogue, and [her] general demeanor.'" (second alteration in original) (quoting *Smith v. Commonwealth*, 219 Va. 455, 464-65 (1978))). As a result of this vantage point, that court "is in a superior position to determine whether a prospective juror's responses during *voir dire* indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath."[3] *Keepers v. Commonwealth*, 72 Va. App. 17, 42-43 (2020) (quoting *Green*, 262 Va. at 115).

Granting deference to the trial court, which was able to see and hear the prospective jurors, and considering the voir dire as a whole, we conclude that the court's finding that Juror 4 did not equivocate and ultimately indicated that she would not require Lacy to testify or hold his silence against him was not "plainly wrong" and did not constitute manifest error. *See Harvey*, 76 Va. App. at 454 (quoting *Huguely*, 63 Va. App. at 127). She acknowledged that Lacy was presumed to be innocent, it was the government's burden to prove him guilty, and Lacy *was not required to produce any* evidence. It is the trial "judge who is best situated to determine

---

[3] "Despite its importance, the adequacy of *voir dire* is not easily subject to appellate review. The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial." *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991) (quoting *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981)). Both a trial court during voir dire and a jury during deliberations "must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions." *Id.* (quoting *Rosales-Lopez*, 451 U.S. at 188).

competency to serve impartially" because jurors "cannot be expected invariably to express themselves carefully or even consistently." *Garcia v. Commonwealth*, 60 Va. App. 262, 270 (2012) (quoting *Patton v. Yount*, 467 U.S. 1025, 1039 (1984)); *see also Harvey*, 76 Va. App. at 456 (explaining that if a trial judge does not engage in improper rehabilitation of a prospective juror, "an appellate court may not set aside the trial judge's determination of a juror's impartiality if the juror's responses, even though conflicting, support that determination" (quoting *McGill v. Commonwealth*, 10 Va. App. 237, 243 (1990))).

In fact, our Supreme Court has warned that "[i]t would be unrealistic to think that jurors do not notice when defendants" do not testify. *Townes v. Commonwealth*, 234 Va. 307, 329 (1987). And "it is not surprising that jurors would want or expect a defendant to testify" because "any conscientious juror naturally would want all the help he or she could get in deciding a case." *Hopson v. Commonwealth*, 52 Va. App. 144, 153 (2008) (quoting *Townes*, 234 Va. at 329). As such, a prospective juror's desire to hear a defendant's testimony is not "grounds for a *per se* exclusion." *Id.* (quoting *Townes*, 234 Va. at 329). Absent such a per se exclusion, we consider whether a juror must be excluded based on the context of the voir dire as a whole.

The questioning on the relevant point was thorough. Five of the prospective jurors expressed concern about not "hear[ing] from both sides." Juror 4 said she "would *like* to hear both sides." (Emphasis added). The prosecutor asked follow-up questions of each of the five, including Juror 4. Given the nature of the back-and-forth with multiple participants, it is reasonable that the dynamics and subtle tells were not fully captured by the transcript. This is precisely why our appellate courts have repeatedly emphasized that the judge closest to the dialogue is in the best position to make discretionary determinations. *See Andrews*, 280 Va. at 256; *see, e.g.*, *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) ("[T]he judge closest to

the contest is the judge best able to discern where the equities lie." (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015))).

Here, upon ruling, the trial court necessarily determined that Juror 4 "did not hold impermissible opinions of a 'fixed character,' in opposition to the defendant's presum[ption of] innocence or his right to present no defense."[4] *Hopson*, 52 Va. App. at 153 (quoting *Justus*, 220 Va. at 976). In the end, a reasonable jurist could conclude that Juror 4's statements revealed that, while she preferred to hear from both sides, she would remain impartial even if Lacy did not testify and she would not hold his choice not to do so against him.

Juror 4's initial responses to point blank questions support these conclusions. She agreed that the defendant was presumed innocent. She also agreed he did not have to present evidence and his status as a defendant did not suggest he was guilty. Once the human interest in hearing both sides of the story came to light, further questioning took place. The prosecutor engaged in what can be described as rehabilitation of Juror 4 after some confusing dialogue. Taken together, viewing the voir dire in its totality, the trial court did not commit a manifest error by concluding that the challenged juror could "render a verdict based solely on the law and evidence presented at trial." *See Ramos*, 71 Va. App. at 157 (quoting *Griffin*, 19 Va. App. at 621). Consequently, the trial court did not abuse its discretion by denying the motion to strike Juror 4 for cause.[5]

---

[4] Even when a "trial court does not make express findings of fact, a reviewing court cannot make its own." *Commonwealth v. Holland*, ___ Va. ___, ___ (Jan. 16, 2025). "Instead, it is an appellate court's function to presume that the trial court made the requisite findings of fact to support its decision." *Id.* at ___. And on appellate review "everything is to be presumed in favor of the correctness of the rulings of a court of competent jurisdiction . . . until the contrary is shown." *Lisann v. Lisann*, ___ Va. ___, ___ (May 8, 2025) (quoting *Early v. Commonwealth*, 86 Va. 921, 925 (1890)).

[5] We are not unsympathetic to the dissent's characterization of Juror 4's responses as conditional or its position that the context of her voir dire exceeds the scope of deference owed the trial court under the manifest error standard. We simply disagree here. In our view, Juror 4's

## II. Jury Instructions

Lacy contends that the trial court erred in refusing to instruct the jury that the prosecution was required to prove that his intoxication was voluntary as an element of the offense of public intoxication.

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues [that] the evidence fairly raises.'" *Conley v. Commonwealth*, 74 Va. App. 658, 674-75 (2022) (quoting *Fahringer v. Commonwealth*, 70 Va. App. 208, 211 (2019)). "[I]n deciding whether a particular instruction is appropriate, [the appellate court] view[s] the facts in the light most favorable to the proponent of the instruction." *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). At the same time, we review a trial court's decisions in giving and denying requested jury instructions for an abuse of discretion. *Commonwealth v. Kartozia*, ___ Va. ___, ___ (June 5, 2025). But "whether a jury instruction accurately states the

---

responses demonstrated her ability to be impartial more than the "I think" statements made by prospective jurors in *Weeks v. Commonwealth*, 248 Va. 460, 475 (1994), and *Keepers*, 72 Va. App. at 45-46. And our Supreme Court has repeatedly warned this Court to refrain from recasting the record and to resist the urge to step into the shoes of the trial court on factual matters, such as those applicable in this case. *See, e.g.*, *Holland*, ___ Va. at ___ ("[T]he tug of our own collective experiences . . . can be compelling, even when appellate review requires a court to analyze the evidence in the light most favorable to the prevailing party and to leave a trial court's finding undisturbed absent plain error or a clear abuse of discretion."). The level of deference owed the trial judge in situations relating to the seating of jurors is great, and necessarily so. Here, the record demonstrates the classic back-and-forth that occurs during voir dire when prospective jurors are being questioned. Defense counsel and the prosecution engaged in inquiries relating to the issue at hand. We conclude that the trial court did not commit manifest error when it "made the call" that—in the end—Juror 4 could be impartial and had not formed a fixed opinion "which repel[led] the presumption of innocence" and caused her to believe that "the accused [stood] condemned already." *See Northcraft*, 78 Va. App. at 589. Instead, when viewing the voir dire in its totality, this juror demonstrated that she could "lay aside" her view that a defendant should testify and her natural interest in hearing both sides of the story and could "render a verdict based solely on the law and evidence presented at trial." *Ramos*, 71 Va. App. at 157 (quoting *Griffin*, 19 Va. App. at 621).

- 10 -

relevant law is a question of law . . . review[ed] de novo." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)).

"In interpreting an ordinance, we apply the same rules of construction applicable to statutes." *See Herrington v. City of Virginia Beach*, 71 Va. App. 656, 661 (2020). When conducting this analysis, "'our primary objective is "to ascertain and give effect to legislative intent[]" as expressed by the language used' in the ordinance." *Id.* (quoting *Cuccinelli v. Rector of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "[W]ords of [an] ordinance are to be given their plain and natural meaning . . . ." *MAD Props., LLC v. County of Augusta*, 83 Va. App. 141, 172 (2024) (quoting *Prince William Bd. of Cnty. Supervisors v. Archie*, 296 Va. 1, 9 (2018)). A caveat to that principle is that a reviewing court should not follow the "plain meaning" of an ordinance if "the terms are ambiguous or appl[ication of] the plain language would lead to an absurd result." *See Thomas v. Commonwealth*, 77 Va. App. 613, 620 (2023) (quoting *Henthorne v. Commonwealth*, 76 Va. App. 60, 66 (2022)). An additional principle applicable to the construction of criminal offenses is that the terms of "the ordinance . . . must be 'strictly construed against'" the prosecution. *Herrington*, 71 Va. App. at 661-62 (quoting *Armstrong v. Commonwealth*, 263 Va. 573, 581 (2002)). Nevertheless, this principle is limited to circumstances in which "the language . . . permits two '*reasonable* but contradictory constructions.'" *Blake v. Commonwealth*, 288 Va. 375, 386 (2014) (quoting *Wesley v. Commonwealth*, 190 Va. 268, 276 (1949)).

The question here is what intent, if any, the government had to prove to establish the offense of public intoxication. "[T]here is no constitutional requirement that an offense contain a

*mens rea* or *scienter* element."[6]  *Clayton v. Commonwealth*, 75 Va. App. 416, 421 (2022)

(quoting *Herron v. Commonwealth*, 55 Va. App. 691, 697 (2010)).  As a result, "courts construe

statutes[, ordinances,] and regulations that make no mention of intent as dispensing with it and

hold that the guilty act alone makes out the crime."  *Id.* (quoting *Herron*, 55 Va. App. at 697).

"An offense for which the action alone is enough to warrant a conviction, with no need to prove

a mental state," is one of strict liability.[7]  *Crime, Strict-Liability Crime*, *Black's Law Dictionary*

(12th ed. 2024).

The Lynchburg ordinance prohibiting public intoxication states plain and simply that

"any person [who] is intoxicated in public" is guilty of a misdemeanor.  Lynchburg, Va., Code

§ 27-10.  The Lynchburg Code incorporates Code § 18.2-388, the state statute prohibiting public

intoxication.  *See* Lynchburg, Va., Code § 27-10 (referencing Code § 18.2-388).  *See generally*

Lynchburg, Va., Code § 1-7 (noting that all state code sections referenced are incorporated,

including all "subsequent amendments thereto").  Neither the plain language of the ordinance nor

the statute mentions an element of intent.

Nevertheless, "[m]ere omission from a statute of any mention of intent should not be

construed as elimination of that element from the crime."  *Case v. Commonwealth*, 63 Va. App.

14, 25 (2014).  Generally, our laws favor a mens rea requirement.  *Id.* at 26.  When a statute is

---

[6] "*[M]ens rea* or *scienter* is simply the unlawful intent or design necessary to any criminal act that is not a strict liability offense."  *Bryant v. Commonwealth*, 67 Va. App. 569, 577 n.6 (2017) (alteration in original) (quoting *Saunders v. Commonwealth*, 31 Va. App. 321, 324 (2000)), *aff'd*, 295 Va. 302 (2018).

[7] "'All crimes of affirmative action,' even strict liability crimes, 'require something in the way of a mental element[—]at least an intention to make the bodily movement which constitutes the act which the crime requires.'"  *Herron*, 55 Va. App. at 699 (quoting 1 Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* § 3.5(e), at 314 (1986)).  The principle does not apply here quite simply because the crime of public intoxication is based on the defendant's physical state and location as opposed to his or her conduct.  In other words, it is not a crime of affirmative action.

silent on mens rea, courts must interpret the law based on the purpose of the offense and the common law context, if applicable. *See Esteban v. Commonwealth*, 266 Va. 605, 609-10 (2003) (requiring consideration of legislative intent); *Case*, 63 Va. App. at 26 (requiring examination of the common law).

Clearly the simple purpose of the ordinance is to criminalize public intoxication and what that might bring. *See Crislip v. Commonwealth*, 37 Va. App. 66, 72 (2001) (holding that the phrase "in public" for purposes of the statute includes private premises visible to the community). *See generally Morgan v. State*, 22 N.E.3d 570, 576 (Ind. 2014) (recognizing that "the purpose of th[at state's] public intoxication statute 'is to protect the public from the annoyance and deleterious effects which may and do occur because of the presence of persons who are in an intoxicated condition" (quoting *State v. Sevier*, 20 N.E. 245, 246-47 (Ind. 1889))). "[T]o insert a *mens rea* element into the offense, and to require proof [of such], would defeat the [law's] purpose[s] . . . ." *See Esteban*, 266 Va. at 610. Language requiring a showing of intent simply is not included in Lynchburg, Va., Code § 27-10 or Code § 18.2-388, and we will not add it. *See generally Haefele v. Commonwealth*, 75 Va. App. 591, 600 (2022) (presuming that if the legislature had intended to make the statute at issue narrower in scope, it would have included language to do so); *Herron*, 55 Va. App. at 698 ("[U]nder well-settled rules of statutory construction, 'omitted terms were not intended to be included within the scope of the statute.'" (quoting *Commonwealth v. Brown*, 259 Va. 697, 704-05 (2000))).

One of the most basic principles of statutory construction is that we begin "with the assumption that the 'legislature says what it means and means what it says.'" *Durham v. Commonwealth*, ___ Va. ___, ___ (Aug. 1, 2024) (quoting *In re Woodley*, 290 Va. 482, 491 (2015)). The offense of public intoxication does not require proof that Lacy's intoxication was

voluntary. Therefore, the proffered jury instruction was an incorrect statement of the law. For this reason, the trial court did not abuse its discretion by rejecting it.[8]

### III. Sufficiency of the Evidence

Finally, Lacy challenges the sufficiency of the evidence to sustain his conviction for obstructing justice.

We review a challenge to the sufficiency of the evidence under well-settled legal principles. "When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "[T]he judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). And we "view[] the facts in the light most favorable to the [government]," granting to it all reasonable inferences that flow from the evidence. *Lucas v. Commonwealth*, 75 Va. App. 334, 339 n.1 (2022) (quoting *Green v. Commonwealth*, 72 Va. App. 193, 202 (2020)). Accordingly, a reviewing court should not consider if, "as an original proposition[,] it might have reached a different conclusion" on whether "the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (second alteration in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The "only 'relevant question'" for the appellate court on review "'is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its

---

[8] We note that the jury was instructed on the affirmative defense of involuntary intoxication. *See Case*, 63 Va. App. at 27 n.3. Consequently, the jury had the option of finding Lacy not guilty if it found that his intoxication was involuntary.

opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Womack v. Commonwealth*, 82 Va. App. 289, 295 (2024) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)).

In conducting our analysis, we are mindful that "[d]etermining the credibility of the witnesses and the weight afforded their testimony [also] are matters left to the fact finder, who has the ability to hear and see them as they testify." *Thorne v. Commonwealth*, 66 Va. App. 248, 253 (2016). When the trier of fact has resolved credibility issues in favor of the government, appellate courts disturb those determinations only if they are "plainly wrong or without evidence to support [them]." *Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021) (alteration in original) (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002)). The requirement of appellate deference to the factfinder "applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of . . . video evidence." *Barney*, 302 Va. at 97 (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)).

Lacy was convicted of obstruction of justice under Code § 18.2-460(A). Code § 18.2-460(A) provides, in relevant part, that a person commits a Class 1 misdemeanor if he "without just cause knowingly obstructs . . . any law-enforcement officer . . . in the performance of his duties . . . or fails or refuses without just cause to cease such obstruction when requested to do so."[9]

This Court has "applied a two-step analysis to determine whether the evidence was sufficient to prove obstruction of justice" under Code § 18.2-460(A). *Maldonado v. Commonwealth*, 70 Va. App. 554, 564 (2019). First, the government must prove that the

---

[9] Our caselaw refers to the offense under subsection (A) of Code § 18.2-460 as obstruction of justice "without force," as opposed to obstruction under subsections (B) and (C), both of which require "threats" or "force." *See* Code § 18.2-460(B)-(C); *see, e.g.*, *Maldonado v. Commonwealth*, 70 Va. App. 554, 563 (2019).

defendant's "actions did, in fact, prevent a law-enforcement officer from performing his duties." *Id.* (quoting *Molinet v. Commonwealth*, 65 Va. App. 572, 578 (2015)). Second, the evidence must establish that the defendant "acted with an intent to obstruct—i.e., prevent—an officer from performing his or her dut[ies]." *Id.* Here, Lacy challenges only the first step of this analysis, suggesting that he did not actually obstruct the officers because they ultimately were able to arrest him and place him in the patrol wagon.

"Acts sufficient for an obstruction [of justice] conviction 'may be either active or passive.'" *Lucas*, 75 Va. App. at 344 (quoting *Maldonado*, 70 Va. App. at 563). Although obstruction can be passive, it "does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult but does not impede or prevent the officer from performing that task." *Maldonado*, 70 Va. App. at 563 (quoting *Ruckman v. Commonwealth*, 28 Va. App. 428, 429 (1998)). As a result, "actions that make an officer's discharge of his or her duty simply more difficult, but achievable, do not constitute obstruction of justice without force." *Id.* (quoting *Thorne*, 66 Va. App. at 255)).

Lacy relies on *Jordan v. Commonwealth*, 273 Va. 639, 649 (2007), for the proposition that he did not impede "the discharge of the officers' duties," although he made it "more difficult" to make the arrest. *Jordan* is unavailing here. At the outset, in that case the Supreme Court of Virginia reversed a conviction for obstruction of justice under Code § 18.2-460(C), a different offense which requires the additional element of threats of harm or the use of force. *See Jordan*, 273 Va. at 642. There, Jordan stiffened, pulled away, and walked slowly away from the police officer while at the magistrate's office. *Id.* at 643-44. The Court held that these actions did not support a conviction for obstruction of justice in part because they "did not impede or prevent" the officer "from performing his tasks." *Id.* at 649.

- 16 -

The evidence here, when viewed in the light most favorable to the government, was not that Lacy simply made it more difficult for the officers by going limp, pulling away, and not complying with instructions. Lacy grabbed at Sergeant Phelps and kicked at the other officers. Further, he braced his feet against the police car and pushed back to remain outside it. He completely prevented the officers from securing him in the car for transport. Unable to put Lacy in the police car, officers determined that a patrol wagon was needed to transport him. The officers held him for about twenty minutes as they waited for the patrol wagon to arrive. Even after it did, Lacy struggled, and several officers were necessary to get him inside.

Based on this record, the trial court properly concluded that the evidence supported the jury's finding that Lacy was guilty of obstruction of justice. *See Lucas*, 75 Va. App. at 345 (distinguishing between not complying with a detention by pulling away from law enforcement, behavior that did not rise to the level of obstruction of justice, and not complying by pushing off of a law enforcement officer, behavior that did constitute obstruction of justice). Lacy's obstructive behavior completely prevented the police officers from discharging their duties. They were not able to get him into the police car that was available at the scene. The fact that, after at least a twenty-minute delay, law enforcement eventually placed Lacy in a different type of vehicle that had to be called to the scene does not preclude the finding that his preceding actions prevented police officers from performing their duties. *See Thorne*, 66 Va. App. at 258.

On the facts of this case, a reasonable factfinder could conclude that Lacy prevented the officers from performing their duty of transporting Lacy in the police car to the jail to affect the arrest. Therefore, the evidence was sufficient to support the jury's finding that Lacy was guilty of obstructing justice under Code § 18.2-460(A).

CONCLUSION

The trial court did not err by refusing to strike Juror 4 for cause. Additionally, the offense of public intoxication does not require that the prosecution prove the defendant's intoxication was voluntary, and therefore the trial court acted within its discretion by refusing to instruct the jury to that effect. Finally, the evidence was sufficient to prove obstruction of justice under Code § 18.2-460(A). Consequently, we affirm the trial court's judgment and remand solely for the correction of an apparent clerical error in the sentencing order.[10]

*Affirmed and remanded.*

---

[10] The sentencing order states that Lacy was convicted of public intoxication under Code § 18.2-388. The summons identifies the charge as public intoxication under Lynchburg, Va., Code § 27-10. We remand the case to the trial court to remedy this apparent clerical error. *See* Code § 8.01-428(B).

- 18 -

Bernhard, J., dissenting.

I respectfully dissent from that part of the majority opinion upholding the trial court's failure to grant the motion to strike Juror 4. In my view, the trial court abused its discretion by denying the motion to strike Juror 4 for cause. Juror 4 expressed only a *conditional* willingness to acquit a non-testifying defendant, contingent on the contents of a hypothetical video. Her responses failed to unequivocally affirm the presumption of innocence or her ability to refrain from holding the defendant's silence against him. This created a reasonable doubt as to her impartiality, constituting manifest error when the trial court failed to strike her for cause. Accordingly, I would reverse and remand for a new trial.[11]

BACKGROUND

At the jury selection stage of Lacy's trial, during their examination, jurors initially agreed that Lacy was presumed innocent, that his status as a defendant did not imply guilt, and that the burden rested solely with the government to prove his guilt beyond a reasonable doubt. When defense counsel asked the more pointed question whether jurors believed a defendant must testify to tell their side of the story or otherwise risk being found guilty, Juror 4 responded affirmatively, adding that she "would like to hear both sides." She explained that "[i]f there's

---

[11] While the government has narrowly prevailed in this case, it should nevertheless serve as a moment of reflection for prosecutors and trial judges alike. In close cases, the insistence on seating prospective jurors who express reservations about their ability to follow the law is a questionable use of judicial resources. A reflexive determination to retain such jurors—who arguably do not stand indifferent in the cause—invites an unnecessary gamble, one that may ultimately result in a retrial. To promote the integrity and efficiency of the judicial process for all participants, including both litigants and victims, trial courts should consider erring on the side of caution when faced with retaining jurors whose impartiality is in doubt. This caution is especially warranted because any reasonable doubt about a prospective juror's ability to remain impartial must be resolved in the defendant's favor. *Bradbury v. Commonwealth*, 40 Va. App. 176, 180 (2003); *see also Northcraft v. Commonwealth*, 78 Va. App. 574, 591 (2023).

only one side, then you don't get the whole story, in my mind" and explicitly agreed that "somebody should have to testify to defend themselves." Several other jurors echoed this view.

To address these responses of some of the jurors "that they weren't going to hear from both sides," the prosecutor sought to clarify the jurors' positions and specifically, to rehabilitate Juror 4. The prosecutor asked if "it change[d] anyone's opinion of that issue if the majority of this event is on video or on camera." The prosecutor probed further, asking, "So if you're able to watch a video, do you still think . . . you can find him not guilty without having heard him testify?" Juror 4 raised her hand. The prosecutor followed up by asking if it "would make any difference to [Juror 4] if the majority of the incident [was] on video," and Juror 4 responded in the affirmative. Seeking to clarify, the prosecutor asked, "If the [d]efendant doesn't testify, would you hold it against him if you've sort of already [seen] the video?" Juror 4 responded, "Yeah, I wouldn't hold it against him. There still might be questions that I would have but it just depends on what's on the video" and "[i]f it answers everything that I'm wondering."

Defense counsel made a motion to strike Juror 4 for cause. The prosecutor countered that Juror 4 said that she did not know if it would "resolve all of her questions as to matters of fact to see a video but that she would not hold it against the defendant if he did not testify." The prosecutor added further that Juror 4 stated that watching a video of the incident "would help." The trial court agreed with the prosecutor's recollection of Juror 4's statements and overruled the motion to strike the juror.

ANALYSIS

Lacy contends the trial court erred by failing to strike Juror 4, who demonstrated she could not neutrally evaluate the case. Juror impartiality is a question of fact entitled to deference unless plainly wrong or unsupported by the record. *See Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023); *Taylor v. Commonwealth*, 67 Va. App. 448, 455 (2017). A trial court, however,

commits manifest error when failing to strike a juror who cannot or will not set aside preconceived views contrary to the presumption of innocence. *Ramos v. Commonwealth*, 71 Va. App. 150, 157 (2019). "In conducting our review, we consider the juror's entire voir dire, not merely isolated statements." *Id.* (italics omitted) (quoting *DeLeon v. Commonwealth*, 38 Va. App. 409, 413 (2002)); *accord Thomas v. Commonwealth*, 279 Va. 131, 164 (2010) (quoting *Lovitt v. Commonwealth*, 260 Va. 497, 510 (2000)).

The right to an impartial jury is guaranteed by both the United States and Virginia Constitutions. *See Northcraft v. Commonwealth*, 78 Va. App. 563, 587 (2023); Code § 8.01-358 (outlining the process for safeguarding this right). When there is any reasonable doubt as to a juror's impartiality, that juror must be excluded. *Breeden v. Commonwealth*, 217 Va. 297, 298 (1976). These principles are strictly applied: a juror's equivocation or failure to firmly adopt legal standards justifies removal. *Taylor v. Commonwealth*, 61 Va. App. 13, 22-23 (2012) ("For that guarantee to be effective, persons accused of violating criminal laws must be provided with 'an impartial jury drawn from a panel . . . free from exceptions.' Every prospective juror must stand indifferent to the cause." (quoting *Breeden*, 217 Va. at 300)). It follows, thus, that Lacy was "entitled to a panel of jurors free from exception before exercising peremptory challenges." *Cressell v. Commonwealth*, 32 Va. App. 744, 755 (2000).

In the instant case, Juror 4 gave conflicting responses about the presumption of innocence and the burden of proof, two concepts essential to ensure a fair trial. Initially, she agreed that she understood that Lacy was presumed innocent and the burden of proof rested with the government. However, she also expressed a desire "to hear both sides." When defense counsel asked if there was "anyone who believe[d] that a person charged with a crime should put on evidence or ha[ve] to tell their side of the story" and if anyone "believe[d] that unless" Lacy "testifie[d]," he or she "would be unable to find him not guilty," Juror 4 responded affirmatively.

She further explained that "you don't get the whole story" "[i]f there's only one side." Counsel followed up by asking if she believed "[t]hat somebody should *have to testify* to defend themselves," and Juror 4 responded, "Yeah." (Emphasis added).

Her answers taken as a whole suggest she could not acquit if the defendant did not testify, undermining the foundational principles of a fair trial. The totality of the juror's response was of such a "fixed character [that it] repels the presumption of innocence in a criminal case" and causes the juror to believe that "the accused stands condemned already." *Northcraft*, 78 Va. App. at 589 (emphasis omitted) (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). Her statements breached "the 'test of impartiality . . . whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial.'" *Ramos*, 71 Va. App. at 157 (quoting *Griffin v. Commonwealth*, 19 Va. App. 619, 621 (1995)).

While jurors may naturally expect a defendant to testify, this alone is not grounds for removal. *Townes v. Commonwealth*, 234 Va. 307, 329 (1987); *Hopson v. Commonwealth*, 52 Va. App. 144, 153 (2008). A juror expressing potential bias can be rehabilitated through instruction and clarification of legal principles. *Scott v. Commonwealth*, 58 Va. App. 265, 272-73 (2011). As a general proposition, the trial court, not the appellate court, has the opportunity to see and hear each juror respond to questions posed during voir dire. *See Townsend v. Commonwealth*, 270 Va. 325, 329 (2005). As a result of this vantage point, the trial court "is in a superior position to determine whether a prospective juror's responses during voir dire indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Keepers v. Commonwealth*, 72 Va. App. 17, 42-43 (2020) (italics omitted) (quoting *Green v. Commonwealth*, 262 Va. 105, 115 (2001)).

Nevertheless, "Proper rehabilitation begins by instructing the potential juror on the correct principle of the law (in this case, the presumption of innocence)." *Scott*, 58 Va. App. at 272; *see also Pereira v. Commonwealth*, 83 Va. App. 431, 452 (2025). "Once the potential juror acknowledges that [s]he can apply this principle of law, the juror must then be allowed to reconcile it with h[er] previous views." *Scott*, 58 Va. App. at 273. "In this fashion, the juror could be rehabilitated using [her] own words to clarify [her] views rather than responding to the suggestions and influence of others." *Id.* (quoting *Bradbury v. Commonwealth*, 40 Va. App. 176, 183 (2003)). When faced with a venire panel's expressed desire for a defendant to present some proof in his or her defense, the jurors should be "questioned on . . . whether they would hold it against" the defendant if he chose not to testify. *Hopson*, 52 Va. App. at 155.

Here, however, the prosecutor's rehabilitation was based on a hypothetical scenario involving video evidence. The prosecutor, in a confusing manner, queried, "So if you're able to watch a video, do you still think if you don't hear the [d]efendant testify, . . . you can find him not guilty . . . ?" Juror 4 agreed that it would "make [a] difference . . . if the majority of the incident [was] on video." The prosecutor again asked if she "would hold" the decision not to testify against the defendant "if [she had] sort of already see[n] the video." Juror 4 averred she would not, but she qualified her response, stating that she "still might [have] questions" and that "it just depend[ed] on what[ was] on the video," and if it answered "everything" about which she was "wondering."

Juror 4's reassurances were thus qualified and *conditional*. She did not affirm she would uphold the presumption of innocence or refrain from penalizing silence; instead, she stated that whether she could do so depended on whether the video answered all her questions. The clear meaning of these statements did not hinge on her tone, inflection, or demeanor, alluded to in *Hopson* to justify deference to the trial court's failure to strike a juror for cause. 52 Va. App. at

- 23 -

151 (noting that appellate deference to a trial court in voir dire matters stems from a trial judge's opportunity to personally observe "the juror's tenor, tone, and general demeanor" (quoting *Teleguz v. Commonwealth*, 273 Va. 458, 475 (2007))). Given that words and not the manner of their delivery are what is here implicated, this Court owes the trial court's interpretation of their meaning less deference, if any at all.

The law is clear that if a reasonable doubt exists as to a venire member's ability to be fair and impartial, the United States and Virginia Constitutions require that person be struck for cause. *Northcraft*, 78 Va. App. at 587. The voir dire discussion *in its entirety* did not provide the trial court the basis to conclude that Juror 4 could set aside her desire to hear the defendant's testimony and evaluate the government's evidence on its own. Similarly, it did not provide a basis for the court to find that Juror 4 could follow the legal principles that the government bore the burden of proof, and the defendant was presumed innocent. The only indications in the record that Juror 4 might be able to "lay aside [her] preconceived views and render a verdict based solely on the law and evidence presented at trial" were her statements that her ability to do so was conditioned on the contents of the presumptive video evidence. *See Ramos*, 71 Va. App. at 157 (quoting *Griffin*, 19 Va. App. at 621). Hence, the record provides an insufficient basis to conclude Juror 4 could evaluate the case solely on the government's evidence or adhere to the governing legal principles. Because her ability to remain impartial was conditional, and because any doubt as to her impartiality must be resolved in the defendant's favor, the trial court erred in denying the motion to strike. *See Ramos*, 71 Va. App. at 157. Therefore, on this record, the trial court was plainly wrong in finding that Juror 4 qualified as an impartial juror.

## CONCLUSION

Accordingly, manifest error appears in the record, and the trial court abused its discretion by denying the motion to strike Juror 4 for cause. "It is prejudicial error for the trial court to

- 24 -

force a defendant to use the peremptory strikes afforded him . . . to exclude a venireman who is not free from exception." *Breeden*, 217 Va. at 300.  As such, the error definitionally, was also not harmless.  Therefore, I respectfully dissent and would reverse and remand for a new trial.